# McKelvy, Appellant, v. Allegheny County, et al.

*Equity—Contracts—Enforcement of contracts—Remedy at law —Authority of agent—County engineer.*

In a proceeding in equity against a county to prevent the defendant from trespassing on certain property and for an order directing defendant to restore buildings and equipment, and to ascertain damages, it appeared that the plaintiff had been the owner of certain land which was condemned by the defendant for the approaches of a bridge; that on appeal from the award of viewers the defendant had agreed, in consideration of plaintiff's making no claim for damages to a gas well located on the ground in question, "to permit the gas well to remain as now- located so long as it shall continue to produce gas and to so construct and maintain the bridge approaches thereto that space shall be left necessary for the free use and operation of the said gas well and the construction and operation of machinery and appliances necessary for its maintenance and operation"; and that in the construction of the bridge abutments certain pipe connections and the boiler and engine house at the well were necessarily removed and a nearby wall was damaged. There was evidence tending to show that the county engineer personally agreed to replace the boiler and engine house. The court below dismissed the bill on the ground that no duty rested upon defendant under the contract except to leave uncovered the place where the well was located; that it was immaterial whether the county engineer made the further agreement alleged, and that the plaintiff had an adequate remedy at law. *Held,* no error.

Argued Oct. 30, 1912. Appeal, No. 185, Oct. T., 1912, by plaintiff, from decree of C. P. No. 2, Allegheny Co., April T., 1911, No. 139, dismissing bill in equity in case of W. H. S. McKelvy v. Allegheny County, and I. K. Campbell, J. D. O'Neil, Stephen J. Toole, Commissioners of Allegheny County. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

Among the other averments of the bill were the following:

"Eleventh.   That on May 9, 1910, your orator had prepared and executed a bill in equity and injunction affidavits, for the purpose of applying to court for an injunction restraining the defendants from interfering with his property rights, when J. G. Chalfant, county engineer, who represented himself to be the person in charge of the erection and construction of the said bridge and approaches thereto, stated to your orator that in order to continue and complete the construction and erection of the said bridge that it would be necessary to remove the said boiler, engine, pump, machinery, equipment sills and buildings enclosing the same, and that if your orator would consent to their temporary removal, that the belt shed, engine and boiler sheds would be restored and the boiler, engine, machinery, etc., would be replaced and connected within ten (10) days from that date.

"Twelfth.   That the County of Allegheny, by its commissioners, agents, contractors and employees, cut, dug and removed earth from and around the gas well and removed and carried away sills and supports necessary for the construction of a rig over said well and the said J. G. Chalfant, county engineer, on May 9, 1910, agreed within ten (10) days thereafter to drive piling at top of bank, drive piling to carry outside line of derrick, leave space for derrick platform and refill earth in and about said well, and to protect the same and the said well from the flow of the Ohio river passing thereby, providing the work of erection and construction of said bridge could be continued at that time."

SHAFER, J., filed an opinion as follows:

The bill is for an injunction to prevent the defendants from trespassing upon a certain boiler house and other property belonging to the plaintiff, for an order directing the defendants to restore certain machinery and equipment around a gas well and protect the same against the flow of the Ohio river, and to ascertain the

damages sustained by plaintiff from loss of gas from the well.

### FINDINGS OF FACT.

First.   On and before November 12th, 1906, the plaintiff was the owner of a lot of ground in the Borough of Sewickley, bordering on the Ohio river and described in the bill.   On this lot near the river was a gas well, owned and operated by the plaintiff, together with a boiler house, engine and other appliances, and pipes leading to the building of the plaintiff.

Second.   In the summer of 1906, the County of Allegheny was engaged in erecting a county bridge across the Ohio river at Sewickley, and for the purpose of providing the necessary approaches thereto the county appropriated and condemned a part of plaintiff's land, the part so appropriated having thereon the gas well and some or all of the machinery and appliances.

Third.   Viewers were thereupon appointed and made an award of damages in favor of the plaintiff, from which he appealed and that appeal came on for trial about March, 1909, at which time an agreement was entered into between the plaintiff and the commissioners of the County of Allegheny, which recites the right-of-way and provides that in consideration of the plaintiff making no claim for damages for the gas well except the removal of the pipes the county commissioners agree "to permit the gas well to remain as now located so long as it shall continue to produce gas, and to so construct and maintain the bridge approaches thereto that space shall be left necessary to the free use and operation of the said gas well and the construction and operation of machinery and appliances necessary for its maintenance and operation."   In pursuance of this agreement no claim was made by plaintiff in that case for compensation for the gas well or appliances connected with it.

Fourth.   The defendants proceeded to construct the county bridge, the approaches of which were upon the

land so condemned, the gas well being a short distance from one of the abutments, and in the construction of these abutments it was necessary to remove the connection of the pipes with the well and to remove the boiler house and engine from the place where it stood, and this was accordingly done by the defendant. In the building of the bridge and approaches space was left necessary for the free use and operation of the gas well, and for the construction and operation of machinery and appliances to operate it. The construction of the bridge damaged more or less a wall or embankment placed by the plaintiff on his land above the site of the bridge for the purpose of protecting the bank. The plaintiff claims that the county engineer agreed with him to replace the boiler house and engine and to drive piling to protect the bank.

Fifth. The plaintiff frequently demanded of the commissioners that they restore the buildings and engine, and that they put in piling to protect the bank. They did in fact put in a certain amount of piling and let a contract for the building of a boiler and engine house, but were prevented from going further by the filing of this bill, in which the plaintiff claims that the buildings they were about to erect were not sufficient. The plaintiff has had no use of the well since the building of the bridge for the reason that he has no boiler or engine erected on the premises to pump out the well and keep it clean, and as we understand it, has no connection from his well to the house and was compelled to buy coal to heat his house at considerable expense.

### CONCLUSIONS OF LAW.

First. We have not deemed it necessary to find whether or not the county engineer attempted to make any agreement with the plaintiff about the matters in question for the reason that it seems to be immaterial whether he did so or not. He would have no power whatever to bind the county in the matter.

Second.  As the county took under its right of eminent domain the land upon which the gas well and all the buildings connected with it were, the plaintiff can have no rights in them except what he got by the agreement.  By that agreement in consideration of his making no claim of damages for the gas well it was agreed by the commissioners that the gas well should be allowed to remain and that the bridge should be built so that space should be left necessary for the free use and operation of it and for the construction and operation of machinery connected with it.  As we read this agreement it puts upon the county commissioners no duty except to leave uncovered the space where the well is located, so long as it continues to produce gas, and to leave enough space about and around it for the use and operation of the well and the construction of machinery and appliances to operate it, both of which are to be done, not by the commissioners, but by the plaintiff himself, and while it seems that the commissioners took the view of it that they should replace the boiler house and engine, and were proceeding to do so, that would seem to be a construction of the agreement much more favorable to the plaintiff than he is entitled to.  We can find nothing in the agreement which binds the county commissioners to build anything or restore anything, but only to leave space in which the plaintiff may do it.

Third.  Any injury to the wall of the plaintiff caused by the removal of some of the soil must be deemed to have been paid for in the condemnation proceedings.

Fourth.  Even if the plaintiff's claim was correct that the commissioners had failed to carry out a contract to build a new engine house and boiler house, plaintiff would have a complete and adequate remedy at law for any damage done him by the failure to do so.  We are, therefore, of opinion that plaintiff has not made out a case for any relief, and that the bill should be dismissed at plaintiff's costs.

The court made a decree dismissing the bill. Plaintiff appealed.

*Error assigned* was decree of the court.

*John E. McCalmont,* for appellant.

*A. B. Hay,* for appellees.

PER CURIAM, January 6, 1913:

Even if J. G. Chalfant, the county engineer, did make the agreement set forth in the twelfth paragraph of the bill of complaint, he had no authority to bind the county commissioners to it, and nothing appears in the five facts, properly found by the court below, which entitles the appellant to the relief prayed for. This clearly appears from the second, third and fourth legal conclusions of the learned chancellor, and upon them the decree is affirmed at appellant's costs.