Harvey C. Lewis, Appellee, v. The Omaha & Council Bluffs Suburban Railway Company, Appellant.

**Eminent domain:** DAMAGES: RAILWAYS: MOTIVE POWER. A corporation organized as a suburban railway company for the purpose of operating a street railway between certain cities and other points, reserving to itself the right to use horse power, electricity or such other power as may now or hereafter prove practicable or desirable, is not precluded from propelling its cars by steam; and in the condemnation of right of way the possibility of the use of steam power may be taken into consideration in estimating the damages to the land through which it runs.

**Same:** RIGHT OF WAY: DAMAGES. Where a corporation, organized with authority to construct and operate a railway, acquires a right of way under the statute granting power of eminent domain, the right to use the same is perpetual, at least so long as used as a right of way; and it is proper in estimating the damages to the land through which it runs to consider what effect the use of the land taken will have upon the value of the whole tract.

**Same:** RAILWAYS: OPERATION: SCOPE OF POWER. It is the purpose for which a railway company is organized as expressed in the body of its charter, rather than its name, which governs the extent of its power; and while a street railway ordinarily is one authorized to use the streets of a city or town under a charter from the municipality, yet if it assumes in its articles the further power to own and operate other railways, and reserves the right to designate the power by which they shall be operated, it becomes a railway corporation in the broad sense of the term, and may determine the motive power to be used in operating its cars.

**Eminent domain:** NOTICE OF CONDEMNATION: SUFFICIENCY. Notice to the sheriff to condemn a right of way for a suburban and interurban line, is broad enough to confer the right upon the company to operate its cars by steam; as suburban does not necessarily mean a railway operated otherwise than by steam.

*Appeal from Pottawattamie District Court.*—Hon. O. D. Wheeler, Judge.

SATURDAY, DECEMBER 14, 1912.

CONDEMNATION proceeding instituted to obtain right of way for defendant's railroad over the land of plaintiff. From the assessment of damages, defendant appeals.—*Affirmed.*

*Tinely & Mitchell,* for appellant.

*J. J. Stewart,* for appellee.

WEAVER, J.—The plaintiff owns a farm of three hundred acres outside of the city of Council Bluffs, Iowa. The body of the farm is upon the low lying land which borders the Missouri river, but one corner or portion thereof rises to a higher level, and at this point it has a frontage of one hundred and eighty feet upon the public highway. Owing to the topography of these lands, the more elevated portion of which we have just spoken constitutes the most favorable and desirable site for plaintiff's buildings and improvements. At this place he has constructed a large and valuable house, and made many other improvements in harmony therewith. The house stands at a distance of about one hundred feet from the highway. Defendant has located and condemned for its right of way a strip of land along this highway, and between it and the plaintiff's buildings, thus appropriating some thirty feet of his dooryard, and making it impossible for him to reach the public road except by crossing the railway track. The jury assessed his damages at $2,983.50. Defendant does not deny its liability for the damages thus occasioned, but contends that the amount is excessive. This result it is argued was made possible by error in the court's charge to the jury.

Many assignments of error are stated in appellant's brief, but as, generally speaking, each and all are ultimately made to depend upon the soundness or unsoundness of the proposition laid down by the trial court in the thirteenth paragraph of its charge to the jury, we proceed at once to a consideration of that question. The instruction reads as fol-

1. EMINENT DOMAIN: damages: railways: motive power.

lows: ''The defendant has condemned the strip in question
for use for suburban and interurban railway purposes, but,
under the law as applied to the facts in this case, the defend-
ant would have the right to use other power than · electric
power in the operation of said line of railway and would have
the right to use steam as a motive power, or, in other words,
a locomotive, over said line; and in determining such damage
you may consider that at the time of such condemnation the
defendant had the right to use steam as a motive power to
propel its cars over said line, and might, if it desired, use
steam in the operation of said line.'' It is the contention of
the appellant that, under the statute as well as by the limita-
tions contained in its articles of incorporation, the company
in this case cannot lawfully operate its railway by steam
power, and that the instruction to the contrary in the quoted
paragraph constituted error for which a reversal and new
trial should be ordered.

By its articles of incorporation the defendant company
declares its nature and the purposes of its organization to
be among other things, ''to purchase, acquire, lease, construct,
maintain, and operate a street railway throughout, over,
along, and upon the streets, avenues, and alleys of the city of
Council Bluffs, Iowa; also from the city of Council Bluffs to
Lake Manawa, a lake lying south of said city, and to and
from such points within and in the vicinity of and suburban
to said city of Council Bluffs as may be determined upon,
whether the same shall be upon streets, avenues, alleys, or
highways, or upon rights of way acquired by purchase or in
the exercise of the right of eminent domain or otherwise; also
to purchase, acquire, lease, construct, maintain, and operate
a street railway throughout, over, along, and upon the streets,
avenues, and alleys of the city of Omaha, Neb., the suburban
districts known as East Omaha, Neb., and East Omaha, Iowa;
also between any of the cities and districts herein named, and
to and from such points within and in the vicinity of and
suburban to said cities and districts, and in the operation of

all such street railways to use and employ therein horsepower and electricity or such other power or motor as may now or hereafter prove practicable or desirable, and, for the purpose of owning, leasing, constructing, maintaining, and operating such street railway, may purchase, lease, or acquire any and all necessary or desirable real and personal property privileges, franchise, grants, leases, and rights of way, and make, execute, and enjoy any contract or lease for right of way over the line or lines of any other street railway company; also in the operation of its street railway and all lines thereof to use and employ the same for the carrying of passengers, freight, express, and United States mail for hire.'' Other paragraphs avow the further purpose to be the acquirement of various kinds of property and the carrying on of various enterprises and lines of business, the particulars of which are not important in this connection. The notice given by the company to the sheriff for the appointment of a jury to assess plaintiff's damages in this proceeding describes the corporation as being empowered to construct and operate street railways, interurban railways, and suburban railways, and states that it has located its suburban and interurban line of railway across the land of the plaintiff.

Under our statutes, any number of persons may unite to form a corporation for carrying on any lawful business (Code, section 1607). When organized with authority to construct or operate a railway, it may exercise the powers of eminent domain for the purpose of acquiring its necessary right of way (Code section 1995). A right of way thus acquired is assumed to be perpetual so long at least as it is occupied and used for railroad purposes. *Hollingsworth v. Railway Co.*, 63 Iowa, 443; *Heskett v. Railway Co.*, 61 Iowa, 467.

2. SAME: right of way: damages.

In assessing damages in favor of the landowner, the jury may take into consideration any and all uses which the company may rightfully make of the land which it condemns, or of the tracks laid thereon, and the injury, annoyance, danger,

and inconvenience, if any, necessarily resulting to the use, enjoyment, and value of the entire tract from which such right of way has been taken. *Henry v. Railroad Co.,* 2 Iowa, 288; *Small v. Railroad Co.,* 50 Iowa, 338; *Clayton v. Railroad Co.,* 67 Iowa, 238. The construction of street railways—that is, of railways laid upon and along the streets and highways of a city for purposes of local traffic and travel—is subject to the authorization and control of the municipalities in which they operate. Code, section 767. An interurban railway is defined by statute as a railway operated by other power than steam, and extending beyond the corporate limits of a city or town to another city or town. Code Supp. section 2033a. An interurban railway company may lay its track along and upon any public road of one hundred feet or more in width, and under certain restrictions may occupy other roads of not less than sixty feet in width. Code Supp. section 2026. Now, the distinction or peculiar privilege given to an interurban railway is this right under certain conditions to occupy and use the public roads as a right of way; and it is doubtless due to this fact that such railway is required to use some motive power other than steam.

If, therefore, in its organization the appellant herein had seen fit to incorporate with articles limiting its activities to the acquirement, construction, and operation of an interurban railway under the statute—that is, a railway operated by power other than steam—its assignment of error upon the thirteenth instruction to the jury would have to be sustained, and a new trial ordered. But its authority is not thus limited. Under the statutes governing the creation of corporation, it was entirely competent for the promoters of this enterprise to make the declared purpose of their organization broad enough to enable it to own and operate both interurban and other railways, and this we think is what they did. The nature of the corporation and the extent of its authority is neither defined nor limited by the name which it assumes, but by the power and authority with which it is clothed and the

business which it proposes to transact. So far as name is concerned, appellant does not profess to be a mere interurban railway company. It assumes the appellation of a "suburban railway company," which is by no means necessarily the same thing. We have no suburban railways as a matter of statutory classification or definition.

In the body of its articles, the company speaks of its purpose to acquire or construct and operate street railways, but here again the name is not controlling.

3. SAME: railways: operation: scope of power. Properly speaking, street railways under our statute are only such as are authorized to occupy and use the streets of a city or town under franchise from the municipality. If, however, a corporation organized primarily to own and operate a street railway assumes in its articles the further power to own and operate other railways, and reserves to itself the right to designate the power by which they shall be operated, we can see no good reason why in its management of such enterprises it is not a railway corporation in the broad sense of the term, and may not exercise the discretion which such corporations generally possess in choosing the motive power to be used in operating its cars. Turning to the appellant's articles of incorporation, we find that it does not limit the scope of its railway business to the city of Council Bluffs, which alone could give it the right to occupy the city streets, but makes it to include the construction, maintenance, and operation of lines "from the city of Lake Manawa as well as *to and from such points within and in the vicinity of and suburban to said city as may be determined upon* whether the same shall be upon streets, avenues, alleys or highways, *or upon rights of way acquired by purchase or in the exercise of the right of eminent domain or otherwise.*" It further provides for lines to Omaha and East Omaha, Neb., and between these cities or districts and other points within and in the vicinity of and suburban thereto. Power is also expressly preserved in the operation of the railways so provided for to use and employ "horse power and

electricity or such other power or motor as may now or here-
after prove practicable or desirable.'' Now, while appellant
could not lawfully use steam power in operating its street
railways in the city of Council·Bluffs, and could not lawfully
assume to operate by steam power an interurban railway along
the public roads outside of the city, there is still, as we view
it, ample reserve power provided for in the articles of incor-
poration in the exercise of which it may by condemnation or
purchase acquire a right of way between Council Bluffs and
other cities and towns in that vicinity or suburban thereto,
and on such right of way build an ordinary railroad, and
operate the same in the ordinary manner. There is no statute
which requires all railroads between cities and towns situated
in the same general vicinity to be built or operated as·interur-
ban lines. Such roads may be of the interurban variety or of
the ordinary type. If a corporation be organized with charter
or articles sufficiently broad and general in terms, it may build
lines of either character, and, having once constructed a road
on one plan, there is nothing to prevent its abandonment for
the other plan. True, if not operated as an interurban line, it
could not lawfully occupy the highways, but, if such objec-
tion should arise, the corporation still has recourse to its right
of eminent domain, by which it could acquire a right·of way
outside of the highways, as it has done in the case at bar. The
farm property in question and the railway line at this point
lie wholly outside of the city and for the purpose of this case
the railway is not in any proper sense of the word a street
railway, and, as we have already seen, its articles of incor-
poration do not restrict the authority or power of the corpora-
tion to make use of this road either as an interurban or ordi-
nary railway. There was therefore no error in instructing
the jury that the right of way condemned across the plaintiff's
land was subject to use for the operation of a railway operated
by steam power.

If we understand counsel, it is further argued that,

although the corporation may have had the legal right to condemn the right of way for the use of an ordinary railway, yet defendant in notifying the sheriff to call out a jury for the appraisal of damages limited its demand to a right of way for an interurban road, and could not lawfully thereafter operate steam propelled cars or trains thereon without a new condemnation. Assuming, without deciding, that the corporation would be found by such limitation if clearly expressed in the notice, we have to say that this notice would not call for an application of the alleged rule. The statement there is that defendant desires the right of way for its "suburban and interurban" line. We have already said that a suburban road need not necessarily mean one that is operated by power other than steam. Indeed, it is a matter of common observation by all who visit the great cities of the land that suburban roads and suburban trains are very often, if not very generally, operated by steam power. Under the proceedings herein, we are disposed to hold that defendant by said condemnation acquired the right to use the track for any and all purposes authorized by the statute, or by its articles of incorporation.

4. EMINENT DOMAIN: notice of condemnation: sufficiency.

There is no reversible error in the record, and the judgment below is *Affirmed.*