HENRY LILIENTHAL, JR., ET AL., APPELLEES, V. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT.

278 N. W. 492

FILED MARCH 18, 1938. No. 30229.

*Beeler, Crosby & Baskins, E. H. Evans* and *Robert B. Crosby,* for appellant.

*Cleary, Suhr & Davis, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY and MESS-MORE, JJ., and FALLOON, District Judge.

MESSMORE, J.

This is an appeal from the district court for Merrick county wherein the jury awarded damages to the plaintiffs for the actual taking, under condemnation proceedings, of 5.17 acres of land and resulting damage to 181.58 acres of land, and other damages incident thereto.

Transmission lines of the defendant enter plaintiffs' land at a point in the northeast quarter of the northeast quarter of section 30, where the main transmission line from North Platte to Columbus enters their land and continues in a northeasterly direction over and across their land for a distance of 404 feet, where it leaves their land for a short distance, but again entering into the southwest quarter of section 20, where the line continues north over and across plaintiffs' land for a distance of 1,392.2 feet to the 5.17-acre tract, upon which is erected a substation. From the north side of the substation site the line again emerges and continues to the north for a distance of 119.4 feet, where it turns at an angle and continues to the north for a distance of 2,416 feet to the end of plaintiffs' land where it continues towards Columbus. From the substation is the line of the Central Power Company which emerges on the south side of the substation and continues in a southeasterly direction over and across plaintiffs' land for a distance of 1,679 feet. On the land described in section 30 there are improvements of the value of $4,000. In section 19 of said farm 40 acres are not touched by the defendant's lines; upon this tract is erected extensive improvements of the value of $6,970 which service the entire farm.

The easement for the 110 KV transmission line, located over and across the northeast quarter of the northeast quarter of section 30, has one 4-pole structure thereon, and the 110 KV transmission line, located over and across the west half of the southwest quarter of section 20, has two structures, one of which is a 4-pole and one a 2-pole structure. The easement for the 110 KV transmission line, located over and across the north half of the southwest quarter of section 20, has one 3-pole structure, a 6-pole

structure, and the third, fourth and fifth structures are 2-pole. The easement for the 33 KV transmission line, located over the west half of the southwest quarter of section 20, has two 2-pole structures.

There are two maps in evidence which fairly disclose the progress of the easement, and the briefs of the parties substantially concur in the course of the transmission lines over and across the plaintiffs' lands. The materials and equipment used on the transmission lines are the same as used on transmission lines of like character, the top wires of which are not insulated. The easement consists of a strip 29 feet in width and practically 1 1/16 miles in length. The exhibits disclose that the land is cut into four irregular tracts by the easement, and it might be stated at this time that a great portion of plaintiffs' land is pasture land, and, under the direction of defendant, no hay can be stacked within 50 feet of each side of the transmission line. Therefore, along a large portion of this easement we have a strip 129 feet in width.

The principal contention relates to exhibit 2, which is a circular letter, issued by the defendant company, compiled under the direction of its consulting engineer, and distributed generally to those persons along the transmission lines serviced by such company. No objection is raised to the other damages allowed by the jury, but defendant contends that the resulting damage to the 181.58-acre tract, amounting to $4,085.40, is excessive. The substation is located close to the buildings and would have a tendency to discourage buyers for the premises.

The value placed on the land in question before and after acquirement of the easement and the building of the transmission line is conflicting and presents a direct conflict in the evidence. Exhibit 2 contains certain admonishments and directions as to the conduct of persons in the vicinity of the lines and constitutes a warning to property owners along the right of way of the electric transmission system of defendant company. Exhibit 2 is as follows:

"We wish to warn all persons, who may approach the

transmission lines of this district for any purpose, of the danger of serious damage to themselves.

"The lines are insulated from the ground and are perfectly safe for all proper farming operations and for people passing under them. But the wire itself has no insulation and must not be tampered with.

"High voltage electric energy is dangerous and injury can result even though a direct contact is not made. No one should touch the poles, *nor the ground wire which extends down one side of the pole.* No one should come within 15 feet or permit tools, equipment used in farming, fish poles or any other thing to come within 15 feet of the wires. Kite strings, ropes and particularly metallic cables of any kind should be kept long distances away from all parts of the line. Hay should not be stacked nearer than 50 feet to the outside wires of the lines because either the hay stacker, or a man on top of the hay stack with a pitchfork in his hand, could easily come so close to the line as to receive a severe electrical shock. Do not attach fence wires to the poles.

"Direct contact with the wires is not necessary for serious shocks. This transmission line carries the highest voltage in the state of Nebraska and during wet weather conditions, electricity may pass to ground through a person's body for distances of 8 feet to 10 feet, unquestionably resulting in death.

"We are using every means to give this matter wide publicity, not because of danger to our lines but because of possible danger to life.

"Please help us in every way so that no serious damage or deaths will occur in the operation of this transmission system. Please read this letter to all members of your family and those employed by you, and particularly stress the danger to boys who might try to climb the poles or play in the vicinity of the transmission lines."

Defendant states that the purpose of exhibit 2 is to educate the public in the characteristics of a transmission line, and to impress the situation on the public by simple

precautions which soon become mechanical and a matter of routine in situations of this kind. Defendant offered expert testimony as to the clearance of the wires, being 14 feet 6 inches apart and 27 feet from the ground, and that there was no danger within a radius of 24 feet from the ground and no danger in conducting ordinary farming operations.

Defendant believes that this court should fix the rule involving damages resulting from the erection of transmission lines and acquiring of easements, in line with certain authorities, to meet the modern conception of the extended use of electric energy. The cases cited by defendant follow:

In *Illinois Power & Light Corporation v. Peterson*, 322 Ill. 342, 153 N. E. 577, it was said in the opinion (p. 349): "Since damages are recoverable only where there is a physical disturbance of a right of property, the fear of a remote and contingent injury which may possibly occur but the happening of which is altogether speculative and uncertain is not regarded by the law as an element entering into the damages which may be allowed to the owner. The damage must be direct and proximate and not such as is merely possible or may be conceived by the imagination." The evidence in the above case, held not to be proper, was the testimony of two witnesses who "thought that the existence of the tower and the transmission line would make the farm less salable and hence depreciate its value, but no facts were adduced upon which to base the opinion. Other elements of damage suggested were that the delivery of material to the tower site might compel the opening of fences;" that the entry of employees of the power company on the land might trample the crops, and the tower and line would be unsightly. None of the witnesses in the above case, it appeared, had any knowledge, acquired by experience or observation, of the effect of the existence of a power line on the market value of agricultural land. We fail to see wherein the foregoing case is analogous to the elements of damage as testified to in the case at bar.

In *Alabama Power Co. v. Keystone Lime Co.*, 191 Ala. 58, 67 So. 833, it was held: "Where a right of way for the erection or maintenance of towers, poles and wires for the transmission of electricity is condemned, the owner may recover compensation for the actual damages arising from depreciation in the value of his remaining land, caused by the presence of these things upon the right of way; but mere fears of people from their presence upon the right of way cannot be made a basis on which to predicate such depreciation or affect the amount of the recovery."

In *Chesapeake & Potomac Telephone Co. v. Red Jacket Consolidated Coal & Coke Co.*, 95 W. Va. 406, 121 S. E. 278, it was held: "In ascertaining damages to a landowner arising from the taking of an easement or right of way through his land, an element of damages is any danger that depreciates the value of the residue of the land resulting from the operations of the condemnor thereon, but such danger must be real, imminent and reasonably to be apprehended, and not remote or merely possible."

In *Missouri Power & Light Co. v. John Hancock Mutual Life Ins. Co.*, 58 S. W. (2d) (Mo. App.) 321, in discussing the admissibility of testimony of defendant's witnesses, wherein they based their conclusions as to the depreciation and market value upon certain facts, that wires and conductors strung across towers might break and cause injury to persons or live stock, and that towers might be blown down or fall over, the presence of the towers on the farm, that a transmission line would decrease the value of the farm and that they would not want the farm, such testimony was held to be improper.

In *Yagel v. Kansas Gas & Electric Co.*, 131 Kan. 267, 291 Pac. 768, the court refused an instruction that, in determining the depreciation in market value of the remaining land not taken, the jury could consider the element of fear in the minds of prospective purchasers of injury to persons or property, if any were likely, from breakage or falling of the high power wires, if this should depreciate the value of the property. The opinion in that case criticized *Tellu-*

*ride Power Co. v. Bruneau,* 41 Utah, 4, 125 Pac. 399, a case cited by appellees. The criticism was that the case was heard 20 years prior to the *Yagel* case, and that the latter case involved modern equipment and construction. In the *Yagel* case the trial court instructed as follows (p. 272): "The fear of a remote and contingent injury which may possibly occur because of the condemning and appropriation of a right of way across the land of plaintiff * * * the happening of which is remote, speculative and uncertain and merely possible, including accidents, action of the elements and acts of God over which defendant has no control, cannot form the basis for allowance of damages."

In *Kentucky Hydro-Electric Co. v. Woodard,* 216 Ky. 618, 287 S. W. 985, in discussing testimony the court stated (p. 635) "that, although the court and jury should take into consideration the opinions of witnesses as to values, such opinions should be tested by the facts on which the witnesses based those opinions, and if the opinions are based on facts which are recognized to be more or less speculative and remote, and as well somewhat fanciful, little, if any, weight need be given them, and they may be in large measure ignored." The witnesses of the appellees in that case admitted that "their estimation of the damages was in a large measure based on the fear the witness had of possible danger to persons arising out of the construction and maintenance of the line. They did not show that this fear was founded on experience, or was reasonable, or was based on the knowledge of how these lines were constructed and maintained. * * * Such fear * * * was that ill-defined, speculative and unreasonable fear. * * * These witnesses did not show that this fear, had it been of the proper kind, was so broad that it affected the market value of the property." The opinion also entertained the proposition (p. 631): "But if such fears be reasonable, not ill-defined, but founded on practical experience, and if they be entertained so generally as to enter into the calculations of all who propose to buy or sell, can it logically be said that they do not depreciate the market value of the property?"

Defendant contends that the admission of exhibit 2, creating the fear and danger, is based entirely upon hearsay statements; that none of the witnesses for the plaintiffs had technical knowledge or experience in matters of the kind in question and they were directly attributable to the warning sent out by the defendant. The defendant sought, on cross-examination, to explain the circular and its use. When it was introduced in evidence, the witness testifying thereto stated that he compiled it and sent it to the property owners and that it applied to construction of transmission lines, such as were being constructed across plaintiffs' land; that it applied primarily to the high voltage of the 110,000-volt line. We believe, under the circumstances as disclosed by the record, that exhibit 2 was admissible.

There are no decisions in the state of Nebraska setting out what elements of damages can be considered by the jury to land remaining after condemnation for the purposes of a power line. Several cases have been set forth in this opinion cited by appellant. While we have not included herein all of such cases, we have cited a sufficient number to apprise us of appellant's contention. We now cite some of the cases from other states that reflect plaintiffs' contention as to the testimony admissible in cases of this character.

In *Telluride Power Co. v. Bruneau*, 41 Utah, 4, 125 Pac. 399, criticized in *Yagel v. Kansas Gas & Electric Co., supra,* the court held: "In a proceeding to condemn a strip of land on which to erect poles bearing wires heavily charged with electricity, if the presence of the wires would expose persons and live stock on the land of defendant not taken to danger, and thus depreciate the market value of such land, defendant was entitled to show such fact." The measure of damages in condemnation cases is the same in Utah as in Nebraska. The opinion in the above case cited *Beckman v. Lincoln & N. W. R. Co.*, 85 Neb. 228, 122 N. W. 994.

In *Evans v. Iowa Southern Utilities Co.*, 205 Ia. 283, 218 N. W. 66, evidence of witnesses was admitted as to danger to the plaintiff, his family, danger to the stock and

damage to the crops while the line was being repaired, and the possibility of wires breaking and striking the plaintiff and members of his family in case of a sleet storm, and the fear a prospective purchaser might have by reason of the high voltage line on the premises. The court said (p. 289):

"It is true that, in general terms, the proper measure of damage is the depreciation in the market value of the property caused by the condemnation in the location and construction of the transmission line; but such damages will vary with the character of the property affected and the uses to which the property is applied. * * *

"It is true that whatever makes the farm in question a less desirable farm does affect its market value, notwithstanding the fact that the law provides for compensation in the first instance for crops damaged or destroyed in the construction and maintenance of the line.

"The appellant relies upon the rule of interpretation as announced by the supreme court of Illinois, which rule is not as liberal as the rule declared in this state from the earliest decisions. We have not and do not adopt the strict limitations as defined in the decisions relied upon by appellant."

The measure of damages in condemnation proceedings is the same in Iowa as in Nebraska.

"The measure of damages for land taken for public use is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking." *McGinley v. Platte Valley Public Power and Irrigation District,* 133 Neb. 420, 275 N. W. 593. See, also, *Stuhr v. City of Grand Island,* 124 Neb. 285, 246 N. W. 461.

Our court is committed to the rule: "The jury in fixing the damages sustained by a landowner in consequence of the appropriation, or injury, of his property for a public use may take into account every element of annoyance and disadvantage resulting from the improvement which would

influence an intending purchaser's estimate of the market value of such property." *Chicago, R. I. & P. R. Co. v. O'Neill,* 58 Neb. 239, 78 N. W. 521; *Kayser v. Chicago, B. & Q. R. Co.,* 88 Neb. 343, 129 N. W. 554.

We believe that the evidence discloses a great disadvantage to the farm lands of the appellees on account of the transmission lines of defendant, both in farming and on the market value; that exhibit 2 was properly admitted in evidence, in so far as it might affect the depreciation and value of the land on a resale, not as an independent item of damages, but under the general rule as set forth in Nebraska. We believe that exhibit 2 is founded on actual damage and injury that will accrue if the admonishments, based on past experience, are not heeded; that such elements of danger as stated therein are not remote, speculative or conjectural.

The jury had the opportunity of seeing the premises in question, and their view thereof may be considered as evidence upon which they based their verdict. A verdict based on the evidence, where the jury have been permitted to view the premises, will not be disturbed unless clearly wrong. *Fremont, E. & M. V. R. Co. v. Meeker,* 28 Neb. 94, 44 N. W. 79.

The evidence on the value of plaintiffs' premises immediately before and after the construction of defendant's lines, in so far as it relates to the resulting damage to the 181.58-acre tract, is in direct conflict. The value of plaintiffs' land is fixed generally at $100 an acre before the construction of defendant's line, and the depreciation in value after the construction of the line, as shown by plaintiffs' evidence, ranges from $10,000, as testified to by plaintiffs, to $9,000, as testified to by one, and $7,500, as testified to by another, witness for plaintiffs. The testimony of witnesses for defendant fixes the value of the land and the resulting damage thereto at much less.

In view of the facts as stated in this opinion and as disclosed by the record in this case, where we are confronted with a particular set of circumstances that are not incident

to the ordinary case where a line crosses an owner's land, we believe, in this case especially, and having in mind all of the evidence, facts and circumstances, that the verdict of $4,085.40 as resulting damage to the 181.58-acre tract affected is not excessive.

The appellant contends that there are no more dangers or hazards to the appellees than to the public in general and persons in the community, as the lines go along roads, over the streets of cities, over farm lands, enter upon premises where the improvements are located, and that such is a matter of common knowledge, and cites the rule that an owner cannot claim as elements of damage such as are suffered generally by the public or by those similarly situated, and that these are sufficient to reject the element of fear in this case. On the land in question run these lines which cut up portions of the farm and carry the highest voltage in the state of Nebraska,—a line capable of doing great damage and injury. The lines pass just a short distance from appellees' home, directly by their barn and over their feed yard. In every farming operation they are exposed and subject to danger, as are their live stock and property. The necessity of working, living and keeping live stock and other property on such premises is damage to which the general public is not exposed. The daily exposure to damage greatly lessens the desirability of this farm as a home.

For the reasons given in this opinion, we believe that the rule, as stated in Nebraska and as hereinbefore cited, is a just rule, and particularly so in the case at bar, and that the damages found by the jury, in considering all of the facts and circumstances, are not excessive.

AFFIRMED.