## Bachner et ux. *v.* Pittsburgh, Appellant.

Argued March 21, 1940. Before SCHAFFER, C. J., MAXEY, DREW, STERN, BARNES and PATTERSON, JJ.

*John R. Bentley,* Assistant City Solicitor, with him *Wm. Alvah Stewart,* City Solicitor, for appellant.

*James P. McArdle,* with him *Arthur I. Zeiger,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, September 30, 1940:

This appeal is from the refusal of a new trial in a condemnation case on the grounds of improper exclusion of evidence and prejudicial error of law in the trial court's oral charge to the jury.

By ordinance No. 141 of 1932, the city of Pittsburgh, appellant, authorized and directed a change of grade and widening of Chartiers Avenue from Bucyrus Street to Corliss Street, and by another ordinance, No. 145 of 1932, established the width and position of the sidewalks and the roadway and reëstablished the grade. Appellees are owners of a property abutting on the northerly side of Chartiers Avenue at a point included within the portion thus authorized and directed to be improved, consisting of a lot of ground with a frontage of 30 feet

and a depth, prior to the improvement, of 110 feet, having erected thereon a two-story frame dwelling house. Property taken and appropriated for the purposes of the improvement included a fifteen foot strip extending the entire width of appellees' lot and running from near their front porch line to the street, at a slope of approximately thirty degrees.

Viewers' proceedings resulted in an award in favor of appellees in the amount of $1300. On appeal from this award to the court below, appellees obtained a verdict in the increased amount of $2,800. The city's motion for a new trial having been refused and judgment having been directed to be entered in accordance with the verdict, it appeals.

At the trial, on the theory that as the Viewers' plan indicated that the city proposed to erect a retaining wall along the northerly side of Chartiers Avenue, as part of the improvement, they were entitled to have damages assessed on the basis that such a wall would be erected and on the basis of the most injurious mode of construction possible, appellees introduced expert testimony tending to show that in all probability the proposed wall would be erected without any provision being made in the construction thereof for ingress to and egress from their property. Thereupon, after appellees had rested, the city offered an ordinance of 1939, duly enacted into law before the proceeding in the court below came on to trial, providing, inter alia, for the paving, curbing, and otherwise improving Chartiers Avenue from Bucyrus Street to Corliss Street and referring to plans, which were also offered, containing detailed drawings for the continuation of a ten foot wall already in course of construction and including drawings of proposed steps immediately adjacent to the Bachner property. The purpose of the offer was stated to be "to contradict and explain testimony of plaintiffs' witnesses in chief when they based their opinion of damages to the property in question on an assumed ten foot wall pass-

ing directly in front of the Bachner property and cutting off access to it on Chartiers Avenue." It is the exclusion of this evidence by the court below and the court's permitting the jury to consider appellees' evidence that access to the property would be cut off by the wall which the city proposed to erect, in arriving at the amount of damages to be awarded, of which the city complains.

The record is devoid of any evidence that the erection of a wall of such construction as to cut off access to appellees' property was a necessary incident of the improvement, and appellees do not so contend. A photograph exhibited at the oral argument showing that in the construction of the proposed wall, completed since the proceedings in the court below, ample provision has been made therein for access to the property, demonstrates just the opposite. It is appellees' position, in effect sustained by the court below, that the limits of the appropriation as defined in the original ordinances and plan included or authorized the taking of their right of access, and that the city is estopped from subsequently altering or modifying the appropriation as so described.

In *Wilson v. Scranton City*, 141 Pa. 621, this Court said: "A fundamental error runs through the trial, in assuming that the city had taken the ground occupied by the sewer, absolutely, and was therefore liable for its full value. The city might have done so, and perhaps the fair presumption would be that it had; but it was not obliged, nor in strictness was it authorized, to take more than was actually necessary for its purpose. . . . The city was therefore entitled to show the extent of its actual taking. This, however, could only be shown by corporate action. The city would not be bound by the opinions of experts, even of the city engineer, as to the amount of interest in the land that should be taken. That was within its own discretion, provided, of course, it did not exceed the limits of necessity for its purpose."

Similarly, it was held in *Phila. Felt Co.'s Appeal,* 293 Pa. 551, a proceeding to assess damages for land condemned for park purposes, where possible interference with water rights was claimed as an item of damage, that the municipality was entitled to declare of record that it had no intention to take any water right of the owner or to interfere with his right to maintain, at its existing level, a dam maintained by him below the portion appropriated, the back water of which extended through and beyond the property taken, and to have damages assessed accordingly. The Court said: "This situation reduces its argument to the single question whether the municipality, in condemning the land for the purposes stated, had the right to limit its taking, and consequent liability for damage, to the use of the property in the condition in which it was found and with the easement of appellant's water rights, or whether it was bound, if it appropriated the land, to pay damages on the theory of a destruction of such water rights. . . . The record discloses nothing tending to indicate that the use of the property as a public park was in any way inconsistent with the maintenance of the stream and dam in its present state. . . . However this may be, the city expressly disclaimed intention on its part to interfere with existing conditions." To this same effect see *Pgh. F. and I. Co. v. Allegheny Co.,* 308 Pa. 328. See also *McKelvy v. Allegheny Co. et al.,* 238 Pa. 580; *McGunnegle v. Pittsburgh & L. E. R. R.,* 269 Pa. 404, 409; *Dickel v. Bucks-Falls Electric Co.,* 306 Pa. 504.

In view of these decisions, it may be taken to be the settled rule, corollary to the general principle that private property may be taken for public purposes only in such an amount *(Penna. Mut. Life Ins. Co. v. Phila.,* 242 Pa. 47) and to such an extent *(Lyon v. Gormley,* 53 Pa. 261; *Dilts v. Plumville R. R. Co.,* 222 Pa. 516) as such purposes reasonably require, that the condemnor may limit its appropriation of property, as defined by the terms of the original appropriation, to what is ac-

tually necessary to carry out its purposes, or bind itself to a specified plan of construction or specified use of the property appropriated, and having done so is enti‑ tled to have the damages assessed on that basis. Thus, assuming, arguendo, that the appropriation as defined by the original ordinances and plan did authorize the city to cut off appellees' right of access, as appellees contend, it was clearly competent, under the decisions referred to,* for the city to limit its taking and conse‑ quent liability for damage by subsequent disclaimer of any intention so to do. Having done this, in effect, by the duly enacted ordinance of 1939 and plan referred to therein, these documents, when offered, should have been allowed in evidence, and damages should have been directed to be awarded on that basis.

The opinion of the court below refusing the city's motion for new trial states: "It appeared to the trial judge that as this ordinance was not an integral part of the ordinance under which the original condemnation proceedings took place, and as there was no positive assurance that the wall would be built and steps pro‑ vided so that the plaintiffs could easily enter and leave their property, it might be highly prejudicial to the plaintiffs to have their rights adjudicated on an ordi‑ nance which could be repealed, and their damages as‑ sessed on the basis of steps which might never be built. Thus we excluded the offer of the ordinance because it could well impress the jury as a fait accompli with all the improvements referred to therein, whereas in fact they were still within the stage of repeal." This objec‑ tion is fully answered by the opinions in *Wilson v. Scran‑ ton City* and *Phila. Felt Co.'s Appeal,* cited supra; these decisions make it clear that, in the event of an attempt on the part of the condemnor to do anything in excess of its rights actually acquired and paid for, the law af‑

---

* None of these decisions is cited by counsel for appellant and it may be assumed that they were not brought to the attention of the court below.

fords the property owner an adequate and appropriate remedy.

The judgment is reversed and a venire facias de novo awarded.