Ella M. Paulson FANNING, Appellee,

v.

MAPCO, INC., a Corporation, Appellant.

Floyd E. FANNING and Phyllis Fanning, Husband and Wife, Appellees,

v.

MAPCO, INC., a Corporation, Appellant.

William HANSEN and Alice Hansen, Appellees,

v.

MAPCO, INC., a Corporation, Appellant.

Ward F. LEE and Dean I. Lee, Appellees,

v.

MAPCO, INC., a Corporation, Appellant.

No. 54010.

Supreme Court of Iowa.

Nov. 10, 1970.

Vest, Mather & Graven, Sac City, for appellant.

Thomas L. McCullough, Sac City, for appellees, Floyd E. Fanning and Phyllis Fanning, Ella Paulson Fanning, and Ward F. Lee and Dean I. Lee.

Herrick, Ary & Cook, Cherokee, for appellees, Floyd E. Fanning and Phyllis Fanning.

Hamilton & Connell, Storm Lake, for appellees, William E. Hansen and Alice Hansen.

LeGRAND, Justice.

This is an appeal from judgments in five condemnation cases which were consolidated for trial. We reverse and hold defendant is entitled to a new trial for the reasons stated in Division III hereof.

Mapco, Inc., a corporation, is a pipeline company which was authorized by the Interstate Commerce Commission under the provisions of chapter 490, Code of Iowa, to acquire easements by eminent domain proceedings to install a 6-inch pipeline for the transportation of anhydrous ammonia. Defendant then proceeded under chapter 472, Code of Iowa, to obtain easements for that purpose over plaintiffs' farms in Sac County, Iowa. On appeal from the commissioners' awards, a district court jury assessed damages for plaintiffs in the following amounts:

| | |
|---|---|
| Floyd E. Fanning and Phyllis Fanning | $18,350.00 |
| William Hansen and Alice Hansen (two tracts) | $ 5,400.00 |
| Ward F. Lee and Dean I. Lee | $15,825.00 |
| Ella Paulson Fanning | $ 3,200.00 |

Judgments were entered for these amounts, and this appeal followed.

I. At the outset we dispose of one procedural matter raised by plaintiffs. It involves the scope of this appeal. Following entry of judgments, defendant filed a timely motion for new trial, which was later overruled. Defendant then filed notice of appeal from the award of damages in each case, from the final judgment entered thereon, from all adverse rulings during the trial, and from the order refusing a new trial. The appeal was taken within 30 days after the order overruling the motion for new trial but more than 30 days after the entry of the judgments. Plaintiffs assert defendant is limited to such issues as were raised in the motion for new trial. As to all other matters, plaintiffs argue, the notice of appeal was not filed within the statutory 30-day period.

■ Rule 335, Rules of Civil Procedure, provides an appeal shall be taken within 30 days from the entry of the order, judgment or decree "unless a motion for new trial * * * is filed as provided in rule 247, and then within 30 days after the ruling on such motion." Defendant complied with this rule, and plaintiffs' complaint is without merit. A similar contention was made and held groundless in Allen v. Lindeman, 259 Iowa 1384, 1399, 148 N.W.2d 610, 619.

■ Defendant may urge here any ground covered by the notice of appeal and is not restricted to those set out in its motion for new trial.

II. Defendant lists 27 separate assignments which raise the following issues:

(1) error in permitting the jury to assess damages on the theory defendant could install multiple pipelines; (2) error in the admission of testimony concerning value and damages; (3) error in admitting newspaper articles as bearing on the market value of plaintiffs' land after the installation of the pipeline; and (4) error in exclusion of value evidence offered by defendant.

III. The issue upon which this case must turn involves the extent of the easement acquired by defendant, a matter upon which court and counsel repeatedly fell out during the course of trial and upon which no agreement was ever reached.

As a result we believe the case was submitted on an improper theory and that the jury was permitted to fix damages for burdens to which this land was not subject under the circumstances existing here.

The trouble arose over the following language in defendant's application for condemnation filed with the sheriff of Sac County:

"6A. Mapco, Inc. * * * is asking for the right, privilege and easement, at any time and from time to time, to construct, maintain, inspect, operate, protect, repair, replace, change the size of or remove a *pipeline or pipelines* * * * within the confines of the right-of-way 50 feet in width * * * and definitely established by the center line of the initial pipeline constructed for the transportation of anhydrous ammonia or substances which can be transported through a pipeline. * * *.

"6B. Easement shall be for the construcation of a *six-inch pipeline* for the transmission of anhydrous ammonia." (Emphasis supplied.)

Paragraph 6A refers to "pipeline or pipelines" while Paragraph 6B requests only the right to construct a single six-inch pipeline.

The quarrel over whether this application permitted defendant to install many pipelines or only one began early in the case and set the tone of the trial throughout.

Plaintiffs argued, and the trial court held, the provisions of 6A and those of 6B were in conflict. The court ruled as a matter of law that the terms of 6A must govern and that defendant was entitled under its easement to install any number of pipelines for any purpose.

The jury was so instructed. Instruction 11 told the jury defendant had an easement "for right of way purposes for the construction, operation and maintenance of an anhydrous ammonia pipeline, or other pipelines, over the properties of the plaintiff previously described."

Instruction 17 advised the jury that the court had decided as a matter of law "that the defendant is not limited to the construction of one six-inch pipeline on this right-of-way." Both instructions were properly objected to.

Assuming, without deciding, the trial court was correct in deciding as a matter of law that the contradictory language in the two provisions of the application conferred upon defendant the right to install any number of lines within the easement area, we do not believe such ruling decides our problem. Here defendant repeatedly attempted to relinquish all right to install more than one line. Our task is to determine if defendant could limit the elements of damage by voluntarily taking less from plaintiffs than it, perhaps, had a legal right to appropriate.

Plaintiffs took the position defendant was irrevocably bound by the language of its application for condemnation and could not thereafter reduce its easement demands in any manner. Several references to the record will serve to demonstrate this.

During opening statements the question as to the extent of the easement arose and a discussion took place out of the presence of the jury in which one of plaintiffs' counsel said:

"Our position is that they are bound by their application for condemnation, and

that is what * * * is before the court at this time."

Again during the questioning of witnesses this statement was made:

" * * * They have spelled out what they are taking [in their application] and I think it is for the court once and for all to lay to rest the fact that this is actually what they are taking and not leave it up in the air."

At another place this from plaintiffs' counsel:

" * * * My position before the court is that the condemnor * * * is bound by the terms of its application for condemnation which we all agree contains this wording."

And once more, "[Counsel for condemnor is] trying to say he changed the application for condemnation by his answer. I don't care what he has got in his answer, that is what is in the application."

At the time of this last statement the court said, "This [application] is what we have to go under. * * *"

At another point the court remarked:

"The easement is 50 feet * * *. Under [6]A they can put in as many pipelines as they need for their business and any size."

This is the way the case went to the jury despite the fact defendant tried diligently to limit its taking to one single six-inch pipeline for the transmission of anhydrous ammonia. All such attempts ingloriously failed.

In each of the five cases defendant's answer contained this paragraph:

"In mitigation and avoidance of damages claimed by plaintiff, the defendant shows that said pipeline easement is limited, as provided in defendant's application and notice of condemnation, as follows: * * * (b) The easement is for the construction of a six-inch pipeline."

During opening statement defendant's counsel conceded its easement was limited to the installation of a single six-inch pipeline, and at another time pointed out that, if additional pipelines were to be installed, further condemnation proceedings would be necessary. Objections were made to questions to plaintiffs' witnesses based upon the installation of multiple pipelines which would establish an "impenetrable wall of pipes" and on the assumption there was "no limit to the number of pipes they can put in there or where they can put them."

As already noted, objection was also made to the instructions which adopted the multiple-line theory of the case.

We hold it was reversible error to deny defendant the right to limit its easement. It is well established under our law that a condemnor may do so. The fact a condemnor originally asked for more does not preclude it from announcing it is actually taking less, and this may be done as late as the trial itself.

■ If doubt existed concerning the conflicting language of Sections 6A and 6B of the defendant's application for condemnation, there could be no such uncertainty about the consistent position taken by defendant throughout the trial. Defendant unequivocally renounced all right to install more than a single six-inch pipeline and in doing so brought itself within the rule of De Penning v. Iowa Power and Light Company, 239 Iowa 950, 954, 33 N.W. 2d 503, 506. There we noted a condemnor may abandon its right to some of the property to which it is entitled, either by a suitable statement in its application filed with the sheriff or later upon trial in district court.

At page 956 of 239 Iowa Reports, at p. 507, of 33 N.W.2d we said, "Defendant at the commencement of the proceedings, by an appropriate reservation in its application and notice, should have limited its condemnation by renouncing any right of access. * * * We think, however, defendant's failure in this respect is not fatal to its right

to have this reservation in favor of plaintiff considered upon the appeal from the award of damages. We see no insuperable objection to the manner in which defendant has waived any right of access over the remainder of the property. The fundamental reason why reservations of this kind are permitted in condemnation applies here as fully as if such a limitation had been made at the outset of the proceedings. * * *"

And at page 957, 33 N.W.2d at page 507 appears this, "The law does not favor the taking of property for public use beyond the necessities of the case and if damages may be avoided by a waiver or stipulation definite and certain in its terms which will fully protect all parties concerned, there is no reason why such a waiver should not be received and acted upon. * * * To permit such a waiver is in keeping with the spirit of the law that no greater interest should be taken than the public use requires." We believe this statement is fully applicable here.

Further authority for this conclusion may be found in Wilson v. Iowa State Highway Commission, 249 Iowa 994, 1003, 90 N.W. 2d 161, 167; Henderson v. Iowa State Highway Commission, 260 Iowa 891, 896, 151 N.W.2d 473, 476; Texas Power and Light Company v. Cole, 158 Tex. 495, 313 S.W.2d 524, 530; Southwestern Bell Telephone Company v. West, Tex.Civ.App., 417 S.W.2d 297, 300; Bachner v. Pittsburgh, 339 Pa. 535, 15 A.2d 363, 365; Earnest v. Westmoreland County, 197 Pa.Super. 638, 179 A.2d 671, 673, 30 C.J.S. Eminent Domain section 449, pages 624–625. See also Annotation at 5 A.L.R.2d 724, 732.

■ We mention parenthetically the De Penning case also disposes of the related problem of assessment of costs which might arise under such circumstances. There we held the trial court has authority to make a proper assessment of costs, including attorney fees, if the waiver of one or more elements of damage resulted in a verdict less than the amount awarded by the commissioners when otherwise it probably would have been greater.

■ In connection with this assignment defendant also complains because the trial court stated in the presence of the jury that plaintiffs were mere licensees of the easement strip, once condemnation proceedings were completed. We agree this was error. The owner of land condemned for easement rights retains all interest therein except what is necessary to carry out the easement purposes. He cannot be described as a "mere licensee." Draker v. Iowa Electric Co., 191 Iowa 1376, 1382, 182 N.W. 896, 899. See also 43 I.L.R. 193–194 for discussion of rights acquired under a pipeline easement.

We hold it was error for the trial court to permit the jury to award damages on plaintiffs' theory that defendant could install multiple pipelines and that defendant should have been allowed to limit its right of condemnation to installation of a single six-inch pipeline.

For the reasons stated herein we reverse and remand for a new trial.

IV. We should also rule on those matters properly raised in this appeal which will likely come up again on retrial.

The first of these concerns the claim that various witnesses were improperly permitted to testify to value.

The objections are twofold. First, it is asserted the witnesses were not qualified to give an opinion on market value; and second, defendant claims the testimony should have been excluded because the witnesses considered some elements not properly allowable as items of damage.

The witnesses to whose testimony objection was made were the owners of the land in question; a tenant on one of the farms; three real estate brokers; and a neighboring farmer familiar with local conditions and land values.

■ On direct examination each of these witnesses testified to value immediately before condemnation for easement purposes and its value immediately thereafter—the proper measure of damages. On cross-examination some of them were shown to have considered elements of damage which were not proper to be considered as separate items. However, in every case the witness had unequivocally testified to value under the correct measure of damages, and the later disclosures on cross-examination go to the weight of their testimony rather than to its admissibility. Ranck v. City of Cedar Rapids, 134 Iowa 563, 565, 569, 111 N.W. 1027, 1028, 1029; Evans v. Iowa Southern Utilities Co., 205 Iowa 283, 286, 218 N.W. 66, 67; Martinson v. Iowa State Highway Commission, 257 Iowa 687, 690, 134 N.W.2d 340, 342, and citations; Nelson v. Iowa State Highway Commission, 253 Iowa 1248, 1253, 115 N.W.2d 695, 698; Trachta v. Iowa State Highway Commission, 249 Iowa 374, 380, 86 N.W.2d 849, 853; Nedrow v. Michigan-Wisconsin Pipe Line Company, 245 Iowa 763, 769, 61 N.W. 2d 687; see also Equitable Life Assurance Society v. Carmody, 131 F.2d 318, 320.

In Nedrow, supra, at page 769, 61 N.W. 2d at page 691, we said, "Great liberality is usually allowed in the introduction of evidence of items and elements which can and should be considered on the question of value of the property. But all of the cases caution against the use of these and elements for anything more than permissible considerations on the question of value."

In the Ranck case, supra, at page 565 of 134 Iowa Reports, at page 1028 of 111 N.W., we said, "Generally speaking, the true rule seems to be to permit the proof of all the varied elements of value; that is, all the facts which the owner would properly and naturally press upon the attention of a buyer to whom he was negotiating a sale and all other facts which would naturally influence a person of ordinary prudence desiring to purchase."

■ There was some evidence of damage to crops and buildings. This is not provable as a separate element for compensation, although such testimony may have some bearing on the market value of the land as a whole. Evidence concerning the loss of a steer would have been clearly improper except that it went in without objection.

The trial court should make certain the jury understands that evidence concerning specific items of damage may be considered only as bearing on the market value of the land, not as loss for which separate recovery may be had.

No objection was made to the instruction on damages. Perhaps a cautionary instruction covering the matters about which defendant now complains would have been helpful. However, none was requested, and the instruction on the measure of damages was a correct statement of the law.

V. Defendant next objects to the testimony of Howard Watts, an engineer, who described the harmful effects of this pipeline as far as drainage is concerned. Watts' opinion was based on defendant's right to install any number of pipes in this 50-foot easement. Since we hold this is not the case, we need not discuss the objection made to such testimony.

■ VI. Plaintiffs called Howard W. Greiner as an expert witness familiar with the transportation of anhydrous ammonia by pipeline. He had wide and varied experience with the manufacture and transportation of this substance, which he described as "extremely dangerous." Objection was made to that part of his testimony which relied on specifications of another installation made by a different company. He stated he had not seen the specifications used by defendant and said he would be better able to testify concerning the matters upon which his opinion had been asked if he could examine them. Defendant objected to his testimony because he

was not shown qualified to express an opinion on the pipeline in question. The trial court ruled it was defendant's duty to show *dissimilarity* between the specifications used by the two companies. Defendant, on the other hand, argued that before the witness could testify the plaintiffs must show similarity between the two. We have recently discussed the question of properly qualifying an expert witness on several occasions. We need not repeat what was said again. See Dougherty v. Boyken, 261 Iowa 602, 155 N.W.2d 488, and Hedges v. Conder, Iowa, 166 N.W.2d 844. We believe the ruling of the trial court was wrong.

Plaintiffs sought Mr. Greiner's opinion based on circumstances not present in this case. It is for them to show such circumstances are identical with, or sufficiently similar to, those before the jury to make the opinion helpful. It is plaintiffs' duty to show their witness *is* qualified, not defendant's to show he *isn't*.

This problem is another which can easily be avoided on retrial by making available the specifications the witness said he needs to form an opinion on *this* installation.

VII. Certain newspaper articles were admitted over defendant's objections. These exhibits were from stories in the Des Moines Register, the Dubuque Telegraph-Herald, the Garner Leader, and the Algona Advance. They all dealt with the danger of anhydrous ammonia pipelines. Plaintiffs did not offer them as proof of the truth of the events recited, but to show that the danger of such installations had been widely publicized and would have an adverse effect on the market value of the land. The court permitted them for that limited purpose.

Of course, newspaper articles are not admissible as proof of their contents. As to such matters they are hearsay. However, it is generally held that they may be admitted for some special purposes. We have already said the parties may show any fact which bears upon the market value

of the land. This would include fear of injury to person or property because of the dangerous qualities of anhydrous ammonia. Defendant does not seriously dispute this, but argues the articles were not shown to reflect "the attitude of a substantial number of prospective buyers."

We have held several times that danger, or fear of danger, resulting from the exercise of condemnation rights may be shown as affecting market value. Lewis v. Omaha & Council Bluffs Suburban Railway Co., 158 Iowa 137, 140, 138 N.W. 1092, 1094; Wheatley v. City of Fairfield, 213 Iowa 1187, 1192, 240 N.W. 628, 632; Evans v. Iowa Southern Utilities Co., 205 Iowa 283, 289, 218 N.W. 66, 68.

Other authority to support this may be found in 27 Am.Jur.2d, Eminent Domain, section 347, page 184, footnote #9; 4 Nichols on Eminent Domain, section 14.-241(1), page 569; Annotation, 38 A.L.R.2d, page 801, paragraph 8. See also Gulledge v. Texas Gas Transmission Corp., (Ky. Appeals), 256 S.W.2d 349, 353; and Deitloff v. Norfolk, 183 Neb. 648, 163 N.W.2d 586, 591.

The real question here, then, is whether the newspaper articles offered were properly admissible as for the purpose of showing a condition bearing on the market value of plaintiffs' land.

We hold it is proper to show the subject of danger, or fear of danger, was a matter of common knowledge among those persons from whom a purchaser for the property would probably come. See 29 Am. Jur.2d, Evidence, section 885, page 989; 32 C.J.S., Evidence, section 726, page 1031; Hotel Riviera, Inc. v. Short, 80 Nev. 505, 396 P.2d 855, 859; Lilienthal v. Platte Valley Public Power & Irrigation District, 134 Neb. 281, 278 N.W. 492, 495, 496.

Before such evidence may be received it should appear the publication is one of general circulation in the community to justify the conclusion it is a matter of common knowledge there. Otherwise it

would not influence market value. Apparently this is what defendant argues when it says the articles do not reflect "the attitude of a substantial number of prospective buyers."

We agree with defendant that under the record here the evidence should have been refused. If on retrial the proper preliminary showing is made as to general circulation in the community, the newspaper articles would be admissible for the limited purpose pointed out herein.

VIII. Defendant also objects that certain evidence offered by him was excluded by the court. We discuss the rulings of the trial court briefly. The letter from the Federal Railroad Administration which defendant sought to introduce was designed to prove the safety of the defendant's system of installation. It was clearly hearsay and was properly refused.

The order of the Iowa Commerce Commission granting permission to install the pipeline in question was excluded because the parties had stipulated to that fact. Defendant claims, however, it was material to show that the power granted was for the installation of a single pipeline only. Perhaps this would be true except that under our holding in Division III this will not be an issue in the case on retrial.

IX. Defendant assigns as error the exclusion of testimony offered by two of his witnesses, Gilbert V. Rohleder and Steven H. Pratt.

In neither case was an offer of proof made. As a result there is nothing for us to review. Johnson v. Johnson, 245 Iowa 1216, 1221, 65 N.W.2d 157, 161; Luse v. Waco Community School District, 258 Iowa 1087, 1094, 141 N.W.2d 607, 611–612.

However, since the same problems may arise on retrial, we set out our views on the rulings of the trial court.

Rohleder was asked to testify concerning the comparative safety of trans-porting anhydrous ammonia by pipeline rather than by rail or truck. The trial court sustained an objection to such proposed testimony on the ground it was based partially on hearsay.

Even if this ruling was wrong, as defendant insists, we cannot see how it prejudiced defendant. The comparative safety of one mode of transportation over another was not an issue in this case. The issue was, rather, a general fear that the installation posed a danger to life and property and adversely affected the market value of plaintiffs' land.

That one mode of transporting the alleged dangerous substance was safer than another—a fact not known to the general public—was clearly irrelevant.

The witness, Pratt, was a farmer in Monona County, having some familiarity with anhydrous ammonia. A pipeline carrying this substance ran through his property. Pratt was asked to testify to the effect of anhydrous ammonia pipelines on real estate values in Monona County. The trial court ruled he could not do so in the absence of a showing that conditions affecting real estate values in Monona County were similar to those in Sac County. Defendant made no effort to show such similarity. We cannot say the trial court abused its discretion in ruling as it did.

We might mention that no objection was made to Pratt's qualifications to testify to real estate values, and the evidence was refused solely for failure to show similarity of conditions.

X. We need not discuss defendant's assignment of error dealing with the admission of certain photographs. No authority is cited to support the claim. In any event we find no merit in the assignment. As we said in Hardaway v. City of Des Moines, (Iowa), 166 N.W.2d 578, 582, the ruling of a trial court on the admissibility of photographs is rarely, if ever, reversible error. Here the pictures might

well serve to assist the jury in understanding the extent of the easement taken and the evidence of the witnesses testifying concerning it. We believe the ruling of the trial court was right.

For the reasons set out in Division III hereof, this case is reversed and remanded for a new trial.

Reversed and remanded.

All Justices concur, except BECKER and RAWLINGS, JJ., who concur specially.

BECKER, Justice (concurring specially).

I concur in the result but for reasons other than those given in Division III. The ground upon which the decision is made in Division III allows a pipeline company to change the basic nature of its permit. Such an extension of power to privately operated common carrier pipeline companies is improper.

I. The real fighting point between the parties to this appeal is whether the damages were to be measured by defendant's authority to install a *pipeline* or *pipelines*. At trial the court held that because of an ambiguity in defendant's application the damages were to be measured as though defendant had authority to install pipelines. This was a vital issue.

Exhibit 10, offered by defendants and excluded by the court, is a decision and order of the Iowa State Commerce Commission issued after statutory hearing. This exhibit can only be construed to mean that the authority issued to defendant was to build *a pipeline,* singular. For some strange reason the actual certificate of authority was never offered. Be that as it may, Exhibit 10 was sufficient to show defendant was only given a right to construct one pipeline.

The two important paragraphs in the commission's order read:

"This Commission issued *pipeline* permits for the construction of an anhydrous ammonia pipeline on April 15, 1968 to Mid-America Pipe Line Company (now MAPCO, Inc., and hereinafter referred to as MAPCO). * * *.

"MAPCO contends that the proposed anhydrous ammonia *pipeline* will be operated as a common carrier under tariffs filed with the Interstate Commerce Commission subject to the provisions of the Interstate Commerce Act (49 U.S.C.A. § 1, et seq.) The Company also represents that it will be under an enforcible legal duty to operate the *pipeline* as a common carrier; and that, since it will be constructed and operated as a common carrier in interstate commerce, it will be serving a public use." (Emphasis added.)

The only time the word *pipelines* is used in the order is in discussing the general subject. The authority here is granted only for the construction of one line.

II. Therefore the trial court erred. This is true not because defendant could waive an authority already received, but because it had never received any authority to waive. This distinction is important and the case should be placed on the actual facts shown by the record.

The easier route would be to say the condemnor can always waive what it doesn't need in the particular lawsuit. De Penning v. Iowa Power & Light Co., (1948) 239 Iowa 950, 33 N.W.2d 503, 5 A.L.R.2d 716, allows a condemnor to affirmatively and clearly waive certain rights it has as condemnor. In DePenning the utility sought to waive the right to access by traveling across other portions of condemnee's land. The easement abutted on a public highway so the right of ingress and egress was unnecessary. This has been referred to as waiver of incorporeal rights acquired with the easement. Annotation, 5 A.L.R.2d 724. Such waiver is reasonable and this court approved the tactic in mitigation of damages.

A different problem is raised when the condemnor seeks to change the *character* of the original eminent domain authority

granted by the Commission. Our statutes, chapter 490, Iowa Code, 1966, and Browneller v. Natural Gas Pipeline Co., (1943) 233 Iowa 686, 8 N.W.2d 474, clearly give the Commerce Commission authority to grant a permit *and the power of eminent domain* to private companies to build a pipeline or *pipelines*. This power is carefully restricted by procedural steps including notice and hearing plus fact-finding requirements designed to protect the general public.

If, after compliance with such procedures, the commission grants a permit, the people of Iowa have a right to know what that permit is and the extent and nature of easement to be acquired. This is necessary to the protection and bargaining position of the hundreds of property owners along the easement right of way. Most will sell the easement rights without court procedures.

III. The condemnor should not be allowed to change the character of the easement by waiver of rights which have been affirmatively granted in the order. It is one thing to allow waiver of rights in connection with the manner by which the easement will be implemented. It is quite another to change the character of the easement itself.

Switching from acquisition of an easement for *pipelines* to an acquisition of an easement for *a pipeline* would change the character of the easement right. See Browneller v. Natural Gas Pipeline Company, supra, where the complexities of use of the two lines by "looping" to increase capacity, necessity for a reasonable distance between the pipelines for safety purposes and other such complications are discussed.

In Henderson v. Iowa State Highway Commission, (1967) 260 Iowa 891, 897, 151 N.W.2d 473, we said:

"In assessing damages it is not what the condemnor intends to do, but what it ac-quires the right to do that determines the quantum of damages. Carolina Central Gas Co. v. Hyder, 241 N.C. 639, 86 S.E.2d 458, 460; 29A C.J.S. Eminent Domain § 155, page 658." Unlike the Highway Commission's authority, defendant's authority stems from the Commerce Commission after hearing. The authority granted should be fixed.

IV. There would be very real constitutional questions if the commission were to grant a permit which contemplated installation of one pipeline now and an additional line or lines at some indefinite time in the future. For a discussion of such *in futuro* power see I Nichols on Eminent Domain, 3d Ed., § 4.11(2), p. 561; Central Louisiana Elec. Co. v. Brooks, (La.1967) 201 So.2d 679:

"Reasonable expectation of future needs and a bona fide intention of using it for such purposes within a reasonable time are required to protect the property from condemnation." 26 Am.Jur.2d, Eminent Domain, § 94, p. 749; 29A C.J.S. Eminent Domain § 92, p. 386.

V. In summary my objection is to this court's action granting a private condemnor the right to unilaterally change the nature of the easement granted to it by the Commerce Commission. The utility acquiring the right to condemn and the commission should be required to make the authority granted sufficiently specific to inform the property owner *at the beginning* as to the nature of the taking. Such broad authority *to change the substance of the permit* is unnecessary to this decision because the easement in its inception was limited to one pipeline.

I concur in all other Divisions of the opinion and the result.

RAWLINGS, J., joins in this special concurrence.