STATE OF IOWA v. R. DAGUE THOMPSON, Appellant.

**Assault with intent to commit murder:** EVIDENCE OF THREATS. In
1  a prosecution for assault with intent to commit murder, evi-
dence of previous threats of violence towards prosecutrix is
admissible on the question of intent.

**Evidence:** CHARACTER OF DEFENDANT. The State may not assail the
2  character of a defendant directly until he has put it in issue,
and then only by evidence of his general reputation or actual
character with respect to the trait involved, and not by show-
ing instances of misconduct.

**Cross examination of defendant:** OTHER OFFENSES. On a prosecu-
3  tion for assault with intent to commit murder, cross examina-
tion of defendant as to whether he had assaulted another in
the presence of the prosecutrix should be denied.

**Evidence:** MEDICAL AUTHORITY: CROSS EXAMINATION. It was preju-
4  dicial error to permit the inquiry of a witness on cross examina-
tion, if a certain medical authority did not lay down the
doctrine that insanity resulting from negligence should not
shield the lunatic from punishment, counsel at the time read-
ing from the authority, as it amounted to an attempt to get
the book before the jury without offering it in evidence; and
for the further reason that the questions were not pertinent.

**Evidence:** BAD CHARACTER: INSTRUCTION. On a prosecution for
5  assault with intent to murder, where there is evidence that
the prosecutrix was of bad moral character, the jury should
be instructed that the only purpose of such evidence was to
discredit her testimony, although instructed that the evidence
of bad character furnished no excuse for the assault.

**Instruction:** CIRCUMSTANTIAL EVIDENCE. An instruction that cir-
6  cumstantial evidence "is to be regarded as direct and positive
evidence of eye witnesses," is error.

**Instruction:** INCLUDED OFFENSES. The court should define the of-
7  fenses included in an indictment or apply the law to the facts
so that the jur  can understand what state of facts constituted
each offense.

*Appeal from Linn District Court.*— HON. WM. G. THOMP-
SON, Judge.

FRIDAY, MAY 5, 1905.

THE accused was indicted for the offense of assault with intent to commit murder, and convicted of that assault with intent to commit manslaughter. He appeals.— *Reversed.*

*McCarthy & Lee* and *Redmond & Stewart,* for appellant.

*Charles W. Mullan,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General, for the State.

LADD, J.— The defendant and Pearl Jones, while living with their parents at Ames, became acquainted on the 7th day of July, 1902. He was then eighteen years of age. She was a year older, and had been divorced from another after a matrimonial experience of six months. They became unduly intimate, and, as the outcome of efforts to separate them, she went to the home of a cousin in Cedar Rapids, and he followed after; searching in vain for employment in Chicago, and possibly elsewhere. In the evening of February 22, 1903, he called to see her, and was permitted to await in her room for her return. She came shortly after midnight, when an altercation ensued, in which he drew a pocketknife and cut her several times. She had manifested great affection for him, and the evidence tended to show that what he did was incited by her expressed determination to abandon him for a life of shame. Many assignments of error are argued, but none involving any save the most elementary principles of law.

Thus appellant complains of the rulings by which proof of previous threats of violence toward Pearl Jones by the accused was received in evidence. This was admissible as bearing on his intention in the use made of the knife. *Walker v. State,* 85 Ala. 7 (4 South. Rep. 686, 7 Am. St. Rep. 17); *State v. Fry,* 67 Iowa, 475;

1. EVIDENCE OF THREATS.

*Hodge v. State,* 26 Fla. 11 (7 South. Rep. 593). But the court erred in allowing her cousin to testify, over objection, that a week before the altercation she had advised him not to allow the accused to come to his house; that she was afraid of him.

The father of Pearl Jones was a witness for the State, and, as a part of its evidence in chief, was permitted, over objection, to testify that the defendant had never been occupied, that he knew of, save as night clerk at a hotel for a couple of weeks; that he had gone to school very little; that he spent his time "bumming around town"; that he gave him no encouragement to visit Pearl; that he had ordered him out of his house, and had heard his wife do the same; that he had sent Pearl to Cedar Rapids on the 4th of February previous to get her out of defendant's company. All of this should have been excluded. The State is never permitted to assail the character of a defendant directly until he has placed it in issue. *State v. Rainsbarger,* 71 Iowa, 746. And even then this is not to be done by proof of particular instances of misconduct, but by evidence of his general reputation or actual character with respect to the trait involved. *State v. Sterrett,* 71 Iowa, 386; *Gordon v. State,* 3 Iowa, 410; *State v. McGee,* 81 Iowa, 17.

2. EVIDENCE: character of defendant.

In this connection, the error in receiving the testimony of the sheriff of Story county, in rebuttal, that defendant for the two years past had been about town every night until from eleven to three o'clock, and that he associated with loafers, should be noticed. It was not in response to anything proven by defendant, and should have been excluded.

Immediately after defendant had given his version of the transaction under investigation, he was asked on cross-examination: "You never struck your sister in Pearl's presence, did you, and knock her down?" Objection as not cross-examination and immaterial was overruled. It should have been sus-

3. CROSS-EXAMINATION OF DEFENDANT: other offenses.

tained, and the prosecutor directed not to drag irrelevant matter into the record.

The defense interposed was that defendant did not appreciate the nature of his act, and Dr. Hill testified that, in view of defendant's early sickness, his weakened condition, his youth, and excessive venery, his physical and nervous make-up, and especially as this was his first love affair, and he had been rejected, he was of unsound mind, and did not know what he was doing. On cross-examination counsel began by reading from Elwell on Medical Jurisprudence, and, over objection, the doctor recognized the reading as correct, and was then asked: " Doesn't Judge Elwell also lay down this doctrine: Many insane criminals are educated and formed by their own negligence in this way. Should they not be held to a strict accountability? To say such a one is insane, and therefore not subject to punishment, is to utter a dangerous folly and to encourage unchecked passions and fatalism." Objection was overruled, and the witness answered: " I believe that he does." This was manifest error. First, it was an attempt to get the contents of a treatise before the jury by the subterfuge of reading from it, rather than offering to introduce it in evidence, and so doing not in cross-examination of anything the doctor had testified to in chief, but as original evidence. *Bixby v. Ry. Bridge Co.*, 105 Iowa, 294; *State v. Peterson*, 110 Iowa, 647. It had no bearing upon the subject of the inquiry of the expert, but related solely to a question of law, namely, whether insanity resulting from negligence on the part of the accused should be permitted to shield him from the penalty of his acts. The questions were not pertinent, and were, in the connection put, extremely prejudicial.

Evidence tending to show Pearl Jones was a woman of bad moral character was introduced. Its only purpose was to discredit her as a witness. The court's only reference to this was in cautioning the jury that this, if true, would

*Margin note:* 4. EVIDENCE: medical authority; cross-examination.

furnish no excuse for the assault. This was true, but, to
**5. EVIDENCE:** **character; instruction.** bad avoid misleading the jury as to the object in introducing the evidence, this also might well have been stated.

In the twenty-first instruction the court erred in saying to the jury that " circumstantial evidence is to be regarded **6. INSTRUCTION: circumstantial evidence.** by you as direct and positive evidence of eyewitnesses." Probably what was intended to be said was that it was of equal value.

While the jury was told what offenses were included in the indictment, none were defined. This should have been **7. INSTRUCTION: included offenses.** done, or else the law so applied to the facts that the jury could have understood what state of facts would constitute each.

Other errors appear in the record, but will not be likely to be repeated. Enough have been noticed to indicate the necessity of another trial.— *Reversed* and *remanded.*