W. A. EVANS et al., Appellees, v. IOWA SOUTHERN UTILITIES COMPANY OF DELAWARE, Appellant.

FEBRUARY 14, 1928.

*Frank S. Payne* and *McFarlin & Simmons,* for appellant.
*Talbott & Talbott,* for appellees.

DE GRAFF, J.—This is a proceeding in eminent domain. The Iowa Southern Utilities Company of Delaware is a corporation organized for the purpose of operating plants generating electricity and selling the current in various cities and towns in the state of Iowa. In 1926, the company procured a franchise from the railroad commissioners of Iowa, authorizing the construction of a high potential electric transmission line, to carry not to exceed 66,000 volts of electricity, upon poles not less than 50 feet in height, and with cross arms not less than 9 feet in width, from Grinnell south to Oskaloosa, Iowa, and thence to Ottumwa and other places.

The appellee W. A. Evans is the owner of 34 acres of land adjoining the city of Grinnell on the south. The premises include all of a square 40 acres, except a tract of about 6 acres in the northeast corner thereof. The public road adjacent to the premises extends north and south along the west line thereof. Practically all the land is tillable. The buildings on the land consist of a dwelling house, garage, and outbuildings suitable for the acreage in question. The premises constitute the plaintiff's homestead.

It may be observed that the petition for condemnation does not limit the width of the right of way, other than that it shall not exceed 100 feet in width, and that, subsequent to the

sheriff's award, the transmission line was constructed, as author-
ized. The record shows that there are four poles carrying this
line on appellee's land. The right of way and the line construct-
ed extend north and south through said premises, and are ap-
proximately 80 rods long. The line is about 35 rods east from
the road, which locates it near the center of appellee's farm,
east and west. The only means of access to the right of way
from the public road is over the west half of appellee's land.

The propositions advanced by the appellant have to do with
certain rulings on the evidence, bearing on the elements of
damage suffered by appellee, and with certain instructions given
to the jury on the rule or measure of damage.
It cannot be questioned that the trial court cor-
rectly instructed the jury as to the rule of dam-
age, since the jury was told that the measure of plaintiff's re-
covery is the difference in market value of the 34 acres of land
in question before the defendant condemned a right of way to
construct and maintain its transmission line, and the market
value of the 34 acres after such right of way was established. It
is contended, however, by the appellant: (1) That the value wit-
nesses offered by the appellee were not qualified by experience or
observation to testify as to the effect of a power line on the
market value of land; (2) that said witnesses included in their
testimony improper elements of damage; (3) that the trial court
in an instruction permitted the jury to consider improper ele-
ments of damage; and (4) that the instructions given by the
court are inconsistent and contradictory in stating the rule or
measure of damage. It is to these matters that the argument
of appellant is primarily directed.

As a preliminary matter, it may be stated that the witnesses
for appellee testified that the land in question was worth from
$300 to $400 per acre before the land was condemned for a right
of way, and from $250 to $350 per acre after the condemnation
of the right of way. The maximum damage estimated by any
one witness was $50 per acre, and the minimum $30 per acre.
The witnesses for the appellant testified that the market value of
the land before the appropriation of right of way was from $275
to $300 per acre, and after the condemnation of the right of way
was $271 to $298 per acre. The maximum damage estimated by
appellant's witnesses was $10 per acre, and the minimum was

286

$2.00 per acre. Six value witnesses testified on behalf of the appellee, and five on behalf of the appellant.

The evidence which gives rise to the controversial matter on this appeal was introduced on the cross-examination of the witnesses of appellee, when they were asked what they took into  consideration in arriving at their estimate of market value before and after the appropriation of the right of way. We have no hesitation in holding that the witnesses introduced by appellee were properly qualified to testify as to the value of the land. *Town of Cherokee v. S. C. & I. F. Town Lot & Land Co.*, 52 Iowa 279; *Winklemans v. Des Moines Northwestern R. Co.*, 62 Iowa 11. They were farmers and landowners. They were familiar with the land, and they testified that they knew its fair market value and the value of other land in that vicinity. There was no occasion for them to qualify as electrical experts. Their lack of experience and knowledge, if same existed with reference to the effect of transmission lines upon land value, would bear only on the credibility of their testimony, and not on their competency as witnesses. Furthermore, the record is silent as to whether these witnesses did or did not have knowledge of the effect on the market value of land across which a transmission line was constructed.

The matters to which the challenge of appellant is made, so far as concerns the testimony provoked by its cross-examination, were not specific items of claim for damage, but as affect-  ing market value. See *Des Moines Wet Wash Laundry v. City of Des Moines*, 197 Iowa 1082 (34 A. L. R. 1517). The trial court in the case at bar had this thought in mind, since the jury was told, in Instruction No. 4, after stating the correct rule to be applied:

"And in determining this difference in the market value, you may take into consideration the inconveniences, if any have been shown, in farming and cultivating the land and the occupancy thereof by the plaintiffs. But you will not allow the plaintiffs any damages that may be caused by the construction, reconstruction, repairing, or locating the poles, wires, or other devices used in and upon said transmission; because the law provides that the company shall pay the owner of said land and

the owner of the crops thereon all of the damages to said land or crops caused by entering, using, or occupying the land for such purposes. And the jury should not take into account any damages which the plaintiffs may have sustained by reason of the destruction of crops; nor should the jury anticipate any future damages arising from the destruction of the crops, nor damages to the land. But these matters may be considered by you as it affects the market value of the property, and may be taken into consideration by you in arriving at the amount of your verdict, if you have found under the evidence that it affects the market value of the property before and after the establishment of the line. And while you cannot take into consideration the dangers, if any have been shown, incident to the construction and maintenance of the line, in fixing the damages, yet you are to consider the use and character of the line across plaintiff's farm in determining the question as to the difference in the value of the farm before and after the establishment of the defendant's easement and right to construct and maintain its line across plaintiff's land. In other words, the only question for you to determine is the difference in the reasonable market value of the land in question before the establishment of the defendant's right of occupancy with its line, and the reasonable market value thereafter.''

It is claimed by appellant that each witness in the first instance assumed the condemnation of a right of way 100 feet in width across the plaintiff's land. It is a sufficient answer to  this proposition that a right of way as the one condemned first appears in the petition of appellant filed with the sheriff. No limitation other than 100 feet is placed upon the width in such petition or in the franchise granted. We do not discover in the record that the width of the right of way is fixed by the appellant or by anybody, except by the franchise,—''not exceeding one hundred feet.'' It is apparent that, if the needs of the appellant require the use of an easement 100 feet in width for the construction and maintenance of its transmission line, the company is entitled to it. If the condemnor desired an easement of less width, it was its privilege to condemn such an easement. The appellant is in no position to complain on this ap-

peal, when the cause was tried upon the theory predicated in its own petition.

Was the appellant entitled to have stricken on motion certain evidence elicited on its cross-examination of appellees' witnesses? A similar question is found in *Smalley v. Iowa Pacific R. Co.*, 36 Iowa 571. It is there said:

"The defendant moved to exclude this witness's evidence as to the amount of damage, because the bases given are too remote and consequential, etc. This was overruled, and such ruling is assigned as error. It was not error to overrule the motion. Some, if not all, the bases were legitimate and proper; and if any were not so, the defendant might, by asking it, have had the court instruct the jury as to them and their proper effect upon the testimony of the witness and his estimate of the damages."

In the instant case, the trial court on its own motion met the situation by a proper instruction. See, also, *Dreher v. I. S. W. R. Co.*, 59 Iowa 599; *Wilson v. Des Moines, O. & S. R. Co.*, 67 Iowa 509; *Dudley v. Minnesota & N. W. R. Co.*, 77 Iowa 408; *Bennett v. City of Marion*, 106 Iowa 628; *Haggard v. Independent Sch. Dist.*, 113 Iowa 486; *Richardson v. City of Centerville*, 137 Iowa 253; *Draker v. Iowa Elec. Co.*, 191 Iowa 1376; *Kukkuk v. City of Des Moines*, 193 Iowa 444.

In *Bennett v. City of Marion*, supra, which was an action to condemn a right of way for a sewer, it is said, in referring to an instruction of the court, that the jury should *not* take into consideration any damages based on the use of the land so as to otherwise inconvenience the plaintiff or lessen the value of the premises, except as previously stated in the instruction:

"This not only excludes the consideration of the improper use of the land, but also the natural and probable effect of the use for which it is condemned. We think it was proper for the jury to consider in what way the taking of land for the purpose would inconvenience the plaintiff in the use of the remainder of his farm, or lessen its value. If sewers properly constructed would affect the atmosphere, or otherwise interfere with the use and enjoyment of the premises, the jury should take this into consideration in making up their verdict."

In the instant case, one of the appellees' witnesses on value stated, on cross-examination, that he took into consideration "the

damage to things when men from the transmission company went through," and the "damages to the crops in preparing and maintaining the line." Another witness testified, on cross-examination, that among the elements of damage upon which he based his estimate was the danger to Mr. Evans (plaintiff) and his family, danger to the stock, and damage to the crops while repairing the line, and the possibility of the wires' breaking and striking Mr. Evans and his family, in case of a sleet storm. Another witness testified, on cross-examination, that among the elements of damage which he considered was the fear prospective purchasers might have by reason of the presence of the high-voltage line on the premises.

It is true that, in general terms, the proper measure of damage is the depreciation in the market value of the property caused by the condemnation in the location and construction of the transmission line; but such damages will vary with the character of the property affected and the uses to which the property is applied. As said in *Des Moines Wet Wash Laundry v. City of Des Moines*, supra:

"The real right of which plaintiff is deprived in the exercise of eminent domain by the defendant, and for which, under the Constitution of the state, he is entitled to be compensated, is the right to remain in undisturbed possession and enjoyment to the end of the term."

It is true that whatever makes the farm in question a less desirable farm does affect its market value, notwithstanding the fact that the law provides for compensation in the first instance for crops damaged or destroyed in the construction and maintenance of the line.

The appellant relies upon the rule of interpretation as announced by the Supreme Court of Illinois, which rule is not as liberal as the rule declared in this state from the earliest decisions. We have not and do not adopt the strict limitations as defined in the decisions relied upon by appellant. See *Illinois Power & Light Corp. v. Talbott*, 321 Ill. 538 (152 N. E. 486); *Illinois Power & Light Corp. v. Cooper*, 322 Ill. 11 (152 N. E. 491); *Illinois Power & Light Corp. v. Peterson*, 322 Ill. 342 (153 N. E. 577); *Alabama Power Co. v. Keystone Lime Co.*, 191 Ala. 58 (67 So. 833).

One further item of evidence offered on the part of the ap-

pellant, over objection, was stricken on motion of the appellee, on the ground that the testimony of the witness was incompetent, "it appearing from the answer of the witness that it is not a fact from his own knowledge, but detailed from something he has read." Subsequently, the witness was asked a similar question, which met with the same objection, and further, that it called for the opinion and conclusion of the witness, and was speculative. The objection was sustained. Error is predicated on these rulings.

It appears that the witness in question was asked as to the length of life of the poles used in the construction of the transmission line, and as to the frequency that appellant would be compelled to send employees upon this land for the purpose of repairing the line. It is apparent from the record that the witness did not purport to base his answer upon his experience, knowledge, or training as an engineer, but simply detailed what the average life of the poles would be, according to the estimate determined by the National Electric Association. There was no error in the ruling. The proffered testimony was simply an attempt to get before the jury the contents of a book or pamphlet, rather than offering to introduce it in evidence. See *State v. Thompson*, 127 Iowa 440. As suggested by counsel for appellee in argument: Any person could read the book or pamphlet in question and get on the stand and testify as to its contents as readily as this witness. Sufficient to state that the witness was not attempting to testify in this particular matter from his own knowledge and experience.

In conclusion, it is urged by appellant that the verdict is excessive. It does seem large, but the jury has spoken, under conflicting evidence as to values. The verdict is within the latitude and longitude of the evidence offered, and it is not the function of a court, *nisi prius* or appellate, to substitute, under the circumstances of this case, its conclusion for the verdict returned by the triers of the facts. Wherefore, the judgment entered is—*Affirmed*.

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.