MARTHA STORTENBECKER, appellee, v. IOWA POWER AND LIGHT COMPANY, appellant.

No. 49402.

(Reported in 96 N.W.2d 468)

1074

MAY 5, 1959.

REHEARING DENIED JULY 24, 1959.

Ross, Johnson, Northrop, Stuart & Tinley, of Council Bluffs, and Gamble, Read, Howland, Gamble & Riepe, of Des Moines, for appellant.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellee.

LARSON, J.—Plaintiff owns 598 acres of land in Sections 11, 13 and 14 in York Township, Pottawattamie County, Iowa. The land in Section 13, comprising 365 acres, has a complete set of farm buildings and is the residence of one son. A road separates it from the remaining 233 acres, which also has a complete set of farm buildings and is the residence of another son. The sons jointly operate this land as a grain and livestock farm and pay cash rent for it.

Defendant instituted proceedings to condemn a right of way and easement for an electric transmission line across a part of the lands in Section 13 only. The easement covers a strip of land 100 feet wide and 3389 feet in length, involving directly an area of approximately 7.7 acres. Over this land, from the southwest to the northeast, are strung three copper transmission wires and two static wires supported by two-pole structures. One one-pole and six two-pole structures were placed on two portions of plaintiff's land. The distance between the poles in a two-pole structure is between 13 feet 7 inches and 14 feet. They are placed at an angle with the north-and-south, and east-and-west fence lines. Between the extreme southwest structure and the next one on plaintiff's land, the wires cross a neighbor's field.

The condemnation commission appraised plaintiff's damages at $2100. Upon appeal to the district court plaintiff claimed $14,950, and the jury awarded $8372. From that award and orders of the trial court in connection therewith, and the judgment for costs, defendant appeals to us.

I. Plaintiff's petition alleged the farm unit from which the right of way and easement was taken included all her lands in Sections 11, 13 and 14, totaling 598, not 365, acres. It is the general rule that where a right of way or easement through a unit of land such as a farm is taken by statutory proceedings, recovery of damages is not limited to the field or division through which it passes, but extends to all the tracts in that unit. Defendant seems to concede that rule, but contends under the undisputed facts disclosed that the unit involved here was only the property owned by plaintiff in Section 13. It contends the court should have so instructed the jury as a matter of law and, having refused to do so upon defendant's request, it committed reversible error.

The learned trial court instructed the jury they should determine the question "from the evidence before you bearing upon the kind and character of the improvements, the contiguousness or noncontiguousness of the several tracts of land, the kind and type of methods of operating of the farming, the ownership, location and use of the farm machinery, and the implements of farming and the manner and method of handling during the period of time covered by the testimony." He then told the jury, "If you find from the evidence that all the lands of the plaintiff located in Sections 11, 13 and 14 *are operated* as a single farming unit, then these lands in their entirety comprising 598 acres should be considered by you in estimating the damages * * *." (Emphasis supplied.) The instruction was proper.

■ Generally speaking, it is the use and operation of the lands in question that determine whether damages for a taking by condemnation should be assessed to all the land in the vicinity owned by the condemnee or to the various tracts or parcels separately. Paulson v. State Highway Commission, 210 Iowa 651, 231 N.W. 296, and cases cited therein; Ham v. The Wisconsin, Iowa & Nebraska Ry. Co., 61 Iowa 716, 17 N.W. 157; Hoeft v. State, 221 Iowa 694, 266 N.W. 571, 104 A. L. R. 1008.

There was evidence from which the jury could reasonably find that the entire acreage, though not contiguous, was used as one farm, so that the loss and inconvenience would affect its entire use and operation. The question then became one of fact for the jury. In addition to plaintiff's petition in which she alleged both tracts were farmed as one unit, she produced evidence that the two tracts of land had been farmed as one unit prior to her ownership and had been farmed as one unit by her sons since she purchased the land in 1941. The sons testified they practiced rotation farming on the land as a unit, that the machinery kept in sheds on both places was used on all the lands, and that they fed the crops raised on these lands to livestock which was pastured on the various tracts in Sections 11, 13 and 14, and that they divided equally the receipts therefrom. When the court refused to pass on this matter as a matter of law, defendant requested that the jury be required to answer the

question: "How many acres are included within the farm unit of Martha Stortenbecker?" The jury's answer of "598 acres" was justified.

■ II. Defendant contends the trial court erred in unduly limiting its right of cross-examination of the plaintiff's witness Harry Grobe. This witness had expressed his opinion on direct examination that the market value of the 598 acres immediately before condemnation was $300 to $315 per acre, and immediately after the taking was $275 to $280 per acre, disclosing a total damage of $14,900 to $20,830. In defendant's attempt to discredit this testimony, the witness was asked, "And what is the fact as to whether your father did at your suggestion and pursuant to your handling of the matter execute a transmission line easement?" Plaintiff's objection was sustained by the court, and defendant then offered proof that the witness Grobe, on behalf of his father, had accepted $1500 for an easement substantially identical to that in character acquired by the condemnation proceedings herein. It was properly rejected.

■ The witness did not himself execute the easement involved. However, it is clear defendant was attempting to show the witness accepted the $1500 offer in the capacity of owner. In that capacity the solicited testimony was improper. We recently passed upon that situation in Basch v. Iowa Power and Light Co., 250 Iowa 976, 979, 95 N.W.2d 714, stating that the price paid by the condemnor for other tracts taken for the same project has been held by this court to be unduly prejudicial, citing Wilson v. Fleming, 239 Iowa 718, 31 N.W.2d 393.

Even if it could be said that from this proposed cross-examination it would appear the witness advised his father $1500 was a fair and reasonable figure for the easement, we are inclined to agree with the rule announced by the court in United States v. Foster, 8 Cir., 131 F.2d 3, 5, which states: "The cross-examination * * * went into a forbidden field because it examined as to the prices paid by the condemnor for other tracts taken for the same project. The doctrine of estoppel to urge error cannot justify extending the privilege of cross-examination into forbidden fields."

Logic as well as authority are adverse to defendant's contention, for the field in which the defendant attempted to enter

involved many far-reaching and collateral matters entirely foreign to the issue of reasonable value. The witness as well as members of his family were faced with a condemnation proceeding against their dying father. Far too many remote and compelling circumstances would be involved in such a settlement for it to be competent, relevant and material to the issue of value involved in this controversy. While the right of cross-examination to test the credibility of a valuation witness should not be unduly restricted, we are satisfied the lack of good faith of this witness could not be established in this manner.

Further support for our position is found in Steensland v. Iowa-Illinois Gas & Electric Co., 242 Iowa 534, 47 N.W.2d 162; Simons v. The Mason City & Fort Dodge R. Co., 128 Iowa 139, 103 N.W. 129, and cases cited; United States ex rel. and for Use of TVA v. Reynolds, 5 Cir., 115 F.2d 294; 32 C. J. S., Evidence, sections 547 and 548, pages 338–341, and section 593, page 448; 2 Nichols on Eminent Domain, Second Ed., section 456, pages 1200, 1201.

III. Defendant next contends the nature of the interest acquired by it in the lands of plaintiff was merely an easement, with the right of ingress and egress for the purpose of repairing and maintaining the transmission line, and that it did not acquire "a right of way" over the lands of appellee. Complaint is made of the court's repeated use of the terms "right of way and easement" in the instructions, and error is predicated thereon. However, unless it appears that the court failed to properly explain the rights acquired by a condemnation of such a "right of way and easement" in the instructions, so that the jury is left to speculate as to its meaning and the rights acquired by condemnor, the contention is without merit. In Instruction No. 9 the court specifically told the jury that the rights acquired by appellant did not include the right to any crops, herbage or profits from said land nor any right to the soil, nor damage which may have been caused by the construction of the line, nor any damage to the lands, crops or herbage which may later be incurred as a result of the defendant's entering upon the farm to inspect, repair or replace the transmission line. It also told the jury, "The right acquired does not

prevent the owner of the land from using the property for any lawful purpose not inconsistent with the transmission line easement * * *." In other words, the right of way for the wires did not interfere with the plaintiff's lawful use of her land for crops or pasture.

Section 489.14, Code of 1958, provides for eminent domain procedure entering upon land in electric transmission line cases. It provides in part: "* * * the right of eminent domain to such extent as may be necessary and as prescribed and approved by the board or commission, not exceeding one hundred feet in width for *right of way* and * * *." (Emphasis supplied.) In addition to the reference in the defendant's application for condemnation of a "right of way and easement" 100 feet wide across plaintiff's land, those words were used and referred to throughout the pleadings. Defendant argues that since "right of way" is a term also used to indicate a possessive right in the land, such as for railroad and highway use, the trial court erred in its general and emphasized use in the instructions, and did not adequately clarify its meaning as used under chapter 489 of the Code.

"Right of way" as used in connection with the term "easement" under this chapter we indicated in the Danker v. Iowa Power & Light Co. case, 249 Iowa 327, 86 N.W.2d 835, refers to the right to maintain the necessary wires *over* the land covered by the easement, and to that extent it is correctly referred to as a right of way over the land.

We are not persuaded that the instructions given by the court as a whole failed to correctly state the extent of the property rights acquired by the defendant-condemnor and properly emphasize those retained by the plaintiff. Furthermore, there was no evidence from which a jury could infer the defendant obtained the use of the land beneath the lines and between the structures.

IV. Defendant urges that the correct measure of damages for the taking by proceedings in eminent domain is the difference in the "fair cash market value" of the property before and after taking, and that the court erred in refusing its requested Instructions Nos. 3 and 4 to that effect, and in instructing the jury that the "fair and reasonable market value" before and

after taking was the standard involved. In connection therewith, appellant complains of the court's action in sustaining objections to questions as to the "fair and reasonable cash market value" propounded to its witness Dudley Stupfell. Although the latter ruling may have been error, it was nevertheless without prejudice, for counsel then asked and received the witness's answer to his valuation questions by referring to the "fair and reasonable market value" before and after the taking.

We have long recognized the propriety of use of the term "fair and reasonable market value" in the expression of values to ascertain damage in condemnation cases. It is the accepted terminology in this state. Danker v. Iowa Power & Light Co., supra, 249 Iowa 327, 86 N.W.2d 835; Hubbell v. Des Moines, 166 Iowa 581, 147 N.W. 908, Ann. Cas. 1916E 592; Hall v. West Des Moines, 245 Iowa 458, 62 N.W.2d 734; 18 Am. Jur., section 242, page 875; 29 C. J. S., Eminent Domain, section 136, pages 968–971. It is true that in discussing such matters the courts often use the terms "value", "market value", "cash market value", "fair market value", and "fair cash market value" as synonymous. As used in condemnation proceedings generally, we think they are. We have often said the terms refer to the price which a willing buyer under no compulsion to buy would pay a willing seller under no compulsion to sell, and have indicated that market value refers to cash market value. State v. Hathaway, 100 Iowa 225, 69 N.W. 449. We cannot agree with defendant that to omit the word "cash" infers a credit transaction may be involved, which would change the estimated values or change the ultimate figure representing the damages suffered. By all authority, to obtain rights in the property of another, the condemnor must pay by cash the award returned unless otherwise agreed between the parties themselves.

Instruction No. 7 correctly told the jury that "Fair and reasonable market value, as the term is used in these instructions, means the fair value of the plaintiff's property in a free and open market between a person who desires and is willing to sell and a person who desires and is willing to buy, where both the seller and the buyer, acting freely, intelligently and voluntarily, bargain for the sale or purchase of the property. * * *

Fair and reasonable market value does not mean the value under peculiar circumstances where greater than its fair price could be procured, nor does it mean the price which the property would bring at a forced sale. It does not mean what the property is worth to the plaintiff nor what the defendant can afford to pay, but what it is fairly worth on the market, as above defined."

We have examined the cases cited by defendant from Arizona, Mandl v. City of Phoenix, 41 Ariz. 351, 18 P.2d 271; Illinois, Illinois Cities Water Co. v. City of Mt. Vernon, 11 Ill.2d 547, 144 N.E.2d 729; Oregon, State By and Through State Highway Comm. v. Holt, 209 Ore. 697, 308 P.2d 181; and Tennessee, Davidson County Board of Education v. First American Nat. Bk., 301 S.W.2d 905; and find the definitions used by the court in defining fair cash market value are substantially the same as the definition used in Iowa in defining fair and reasonable market value, and as used herein by the court.

Regardless of how it is considered in other jurisdictions, we have approved generally the term "fair and reasonable market value" as the value to be considered by the jury immediately before and immediately after condemnation by eminent domain. We are not persuaded to change now. In the Tennessee court the "fair market value" rule was used as meaning the "fair cash market value", and we can agree with that usage. It must also be remembered any other but a cash award by a jury in fixing damages for taking of property under eminent domain would violate section 18 of Article I of the Constitution of the State of Iowa as amended, and chapter 472, Code of 1958.

V. Perhaps the most difficult of the assigned errors for our consideration is the contention that the trial court should have sustained defendant's motion for a new trial upon the ground that the jury verdict was so grossly excessive as to indicate passion and prejudice and lack of a clear understanding by the jury of the rights taken or procured by defendant. Defendant earnestly contends under the record it was the duty of the trial court to set aside the verdict or require a substantial reduction in the amount of the award. It is pointed out that the award was almost four times the $2100 allowed by the commissioners, that the owner showed no reduction in the amount of cash rent received for the property, that only one field under

cultivation was affected by two structures, and that the use of the other fields not under cultivation was not affected as permanent pasture, that with the exception of that one field the loss would be slight, that no valuation witness testified as to a sale of farm lands over which a power line right of way and easement existed, while all of defendant's witnesses considered such sales.

However, the amount of damages fixed by the jury was well within the estimates fixed by the witnesses. Plaintiff's witnesses set the figure between $11,960 and $20,830, and defendant's witnesses fixed it between $1725 and $2000. That fact we have often recognized as quite persuasive. Evans v. Iowa Southern Util. Co., 205 Iowa 283, 218 N.W. 66; Miller v. Iowa Electric Light & Power Co., 239 Iowa 1257, 34 N.W.2d 627; Korf v. Fleming, 239 Iowa 501, 32 N.W.2d 85, 3 A. L. R.2d 270, and citations; Wilson v. Fleming, 239 Iowa 718, 723 to 725, 31 N.W. 2d 393, and citations; Hostert v. Iowa State Highway Comm., 250 Iowa 253, 93 N.W.2d 773.

The evidence reasonably shows a perpetual loss of income of from one-eighth to one-fourth acre per structure, and an increased burden in hand-mowing weeds on the uncultivated land. Due to the size of the machinery in use and the spacing between the poles of each structure, as well as their angle on the fields, considerable areas will be lost in farming around them and weeds will need to be cut by hand. Point rows will be necessary, and sizable turnouts will destroy crops in those places.

It is true that the amount of damage suffered in such a matter is usually a question for the jury, and the court should not interfere if the award is sustained by the evidence and the court instructions are adequate. However, where the award is so large that it shocks the conscience, it is held generally that the court is justified in setting aside the verdict and in granting a new trial. Luthi v. Iowa State Highway Comm., 224 Iowa 678, 683, 276 N.W. 586; Youtzy v. Cedar Rapids, 150 Iowa 53, 129 N.W. 351; Pearse v. Loup River Public Power District, 135 Neb. 611, 290 N.W. 474; Campbell v. Iowa State Highway Comm., 222 Iowa 544, 269 N.W. 20; Jenkins v. State Highway Comm., 208 Iowa 620, 224 N.W. 66.

While our general inclination is to sustain the trial court in its determination of the question of whether a verdict should be set aside as excessive, or require a remittitur, yet each case must depend upon its own facts and circumstances as disclosed in the record. Trachta v. Iowa State Highway Comm., 249 Iowa 374, 392, 86 N.W.2d 849, 860.

After carefully considering the evidence as well as the limited rights taken under these proceedings, we are inclined to believe the award of $8372 was so excessive as to require a new trial. The sum would have been more nearly warranted for a full taking as for a railroad right of way or highway. Here the very limited effect, even the actual loss of three or four productive acres in the 598-acre farm, plus the farming inconvenience, would not justify such an award. There was no showing of any loss of rent to the owner, and we cannot believe the effect on the operation of such a large unit could be so great. The principal loss, farming inconvenience, though substantial, we think, cannot justify such an over-all loss. A verdict of almost four times the condemnation commission's award under the circumstance should have been shocking to the trial court's conscience.

Although we do not find passion and prejudice requiring a reversal, we cannot in fairness permit the judgment rendered herein to stand, and must hold that the trial court erred in not setting it aside. We are, however, well aware of the time, cost and inconvenience another trial of this matter would involve. If, therefore, plaintiff files a remittitur of $3000 reducing the judgment to $5372, the case will be affirmed. If not, it must be reversed and returned to the lower court for a new trial.— Affirmed on condition.

THOMPSON, C. J., and BLISS, OLIVER, GARFIELD, HAYS, GARRETT, and THORNTON, JJ., concur.

PETERSON, J., takes no part.