William SONNTAG et al., Appellees,

v.

**IOWA PUBLIC SERVICE COMPANY,
a Corporation, Appellant.**

No. 53981.

Supreme Court of Iowa.

Sept. 24, 1970.

Geo. F. Davis, of Sifford, Wadden & Davis, Sioux City, for appellant.

David E. Green, Carroll, for appellees.

STUART, Justice.

In this condemnation appeal, the trial jury awarded plaintiffs $7332 for an easement to erect and maintain a high-voltage, electric transmission line along one side of their farm. Defendant has appealed from the judgment entered thereon contending (1) the award was excessive under the evidence, and (2) the court erred in failing to strike the allegation that the electric transmission line created a hazard and danger to farming operations.

Plaintiffs derived their interest in the farm in question under the will of Katie Joest deceased who owned this quarter section of land located one and three-quarters miles north and east of the Carroll city limits. Defendant previously had purchased four acres in the southwest corner for a substation and acquired an easement for a transmission line along the south side of the farm. An REA transmission line ran along the north side of the farm. The farm was adjacent to a county road on the west. On the east edge of the road was a telephone line 16 to 20 feet above the ground. Across the road to the west parallel to the property was another highline.

Except for the buildings, lots and a small area for piling of rocks and refuse, the 156 acre farm is all tillable. Its highest and best use is agricultural. There was no evidence the farm was valuable for residential or commercial development and allegations to that effect were stricken.

Defendant took an easement for the construction, maintenance and operation of an electric transmission line along the west side of the farm 59 feet wide containing approximately 2.59 acres. Two structures 700 feet apart were erected adjacent to the road. Each structure consisted of two poles. One pole was set next to the road, the second was located 15½ feet into plaintiffs' field. The structures carried three power lines and two lines to protect the installations from lightning. The power lines sagged to approximately 32 feet above the ground. About two-tenths of an acre cannot be cultivated because of the structures. The remaining land subject to the easement can be farmed.

I. Appellant relies heavily upon our decision in Stortenbecker v. Iowa Power and Light Company (1959), 250 Iowa 1073, 1083, 96 N.W.2d 468, 473–474, in claiming the award was excessive. This case also sets forth the principles of law which govern this issue. Under a similar type of easement we conditioned our affirmance upon a remittitur of $3000 reducing the jury verdict of $8372 to $5372. A tabular comparison of the two cases follows:

|  | Stortenbecker | This case |
|---|---|---|
| Acres involved | 598 | 156 |
| Length of easement | 3389 feet | 2083 feet |
| Width | 100 feet | 59 feet |
| Number of structures | 7 | 2 |
| Area involved | 7.7 acres | 2.59 acres |
| Area per structure that would show perpetual loss of income. | ⅛ to ¼ acre | ⅛th ¼sth ⅒th acre |
| Owner's damage figures | $11,960 to $20,830 | $7800 $9360. $15,600 $21,400 to $27,300 |
| Condemnor's damage figures | $1725 to $2000 | $780 $1170 |
| Verdict | $8372 | $7332 |
| Decrease in value per acre in farm | $14 | $47 |
| Damages allowed by jury per acre of easement | $1087 + | $2830 + |

The statistics in Stortenbecker were more favorable to the condemnee than those in the instant case. Unless the evidence of damages in other respects is stronger here, Stortenbecker would seem to control the result. The evidence in the two cases relating to the difficulties and inconvenience of farming around the structures was quite similar.

Plaintiffs seek to distinguish this case from Stortenbecker. They call our attention to the difference in the size of the farms but do not state why a larger award for the smaller farm would be justified. Ordinarily, as in Stortenbecker, the condemnees believe it to be an advantage to have the largest number of acres possible included in the property subject to condemnation.

■ Appellee also points out the value of the land condemned here was almost twice as valuable as the land in Stortenbecker. The amount of land lost for actual farming operations is so small it is of little consequence. If the land had been taken, the per acre value of the land would assume more importance. It is less important when it relates to the before and after value of the farm and the land subject to the easement may still be farmed.

There is no reference in Stortenbecker as to the distance from the farm to a city

or town. There was no evidence here that this farm had any extra value for commercial or residential purposes because of its location. The extra value of a farm close to a town is reflected in the per acre value set out above.

■ In Stortenbecker there was no consideration given the difficulty of aerial spraying of crops caused by the transmission line. Three sides of this farm were surrounded by highlines prior to the condemnation. The effect of the condemnation was to place a new highline on plaintiff's property instead of across the road and raise the height of the obstruction from a 16 to 20 feet telephone line located adjacent to the farm. This increased difficulty in spraying is a factor which the jury could consider in assessing damages.

There was evidence of danger in working around the poles and under the lines. It was pointed out that combines with cabs and radio aerials might extend 22 feet in the air. The uncontradicted testimony is that the lowest point of the wires was 31 feet 10 inches above the ground.

■ There was evidence livestock has been killed by fallen highlines and that a person could be shocked by static electricity which occasionally builds up under the lines. We hold the jury could consider these hazards as factors affecting the after value of the farm. The evidence, however, shows the danger to livestock was so unlikely and the injury from static electricity so inconsequential, that these factors would not support a very large award of damages.

■ The award made by the jury was well within the range of damages testified to by the expert witnesses, but unless we wish to depart from the principles relied on in requiring a remittitur in Stortenbecker, we cannot affirm the award made here. It is common knowledge that utility companies are not popular defendants. The courts have the duty to set aside awards made by overly generous juries which in all fairness are not supported by the evidence and do not render substantial justice. The award was clearly excessive.

Defendant-appellant seeks either a new trial or a substantial reduction in the amount of the verdict by this court. We therefore affirm the trial court on the condition that plaintiffs file a remittitur of $3500 reducing the judgment to $3832. If they fail to do so, the case will be reversed and remanded for new trial in accordance herewith.

Affirmed on condition.

LARSON, LeGRAND, REES and UHLENHOPP, JJ., concur.

MOORE, C. J., and BECKER, MASON and RAWLINGS, JJ., dissent.

BECKER, Justice.

I respectfully dissent.

An examination of the record reveals plaintiffs' evidence as to damages is squarely based on the rule for computation of such damages adhered to in this court, i. e., the difference in the value of the farm before the taking and the value after taking. Five witnesses testified and their per acre loss in value testimony was $100, $100, $60, $50 and $175. Two witnesses testified for defendant. Their per acre loss in value testimony was $5 and $7.50. The jury's assessment of loss of value per acre was $47.

The ultimate question here is not how many acres are lost, or how hard it is to cultivate under and around the lines and poles, or how inconvenient the addition of this transmission line makes the use of the property. The basic question is how much did this condemnation procedure affect the fair market value of the farm as a whole.

A local jury assessed the damage well within the outer limits of the evidence. There was good, well qualified, expert opinion to sustain the assessment of the figure chosen or even higher. I see no

reason to substitute our judgment for the combined expertise of the witnesses and the local jury. The jury verdict should be sustained.

MOORE, C. J., and MASON and RAWLINGS, JJ., join in this dissent.