**HETHERINGTON LETTER COMPANY,**
Appellant,

v.

**CITY OF CEDAR RAPIDS, Iowa, et al., in the matter of the condemnation of real estate for urban renewal project designated as the Civic Center Urban Renewal Project, Iowa R–13, in Linn County, State of Iowa, by the City of Cedar Rapids, Iowa, Appellee.**

No. 55195.

Supreme Court of Iowa.

May 23, 1973.

Edward S. White, Carroll, John D. Randall and G. K. Thompson, Cedar Rapids, for appellant.

David F. McGuire, City Atty., Cedar Rapids, for appellee.

REYNOLDSON, Justice.

This is an appeal by Hetherington Letter Company (condemnee) from a district court verdict and judgment fixing damages for the condemnation of its business premises by the City of Cedar Rapids (condemnor). All of condemnee's real estate, in the path of an urban renewal project, was condemned on January 8, 1968. We modify and affirm.

Condemnee raised below, and argues here, issues relating to admissibility of evidence, jury instructions, and attorney fees, which we discuss in the following divisions.

I. On appeal to district court from condemnation commission's award of $112,400, condemnee's petition alleged that in 1962 condemnor employed expert appraisers (J. M. Cleminshaw Company) who appraised the subject property for $135,661. It was alleged condemnor had received benefit by payment of taxes at said valuation and was therefore estopped from claiming the value so fixed was not the actual value of the condemned property.

Following certain pleading maneuvers, condemnor filed application for adjudication of law points relating to the admissibility of evidence to support these allegations of condemnee's petition. No issue is raised based on use of this procedural device to effect, in actuality, a suppression of evidence. Trial court ruled, "[P]laintiff in establishing his main case shall not seek to introduce evidence of the taxable values or the so-called Cleminshaw appraisals, nor refer to these matters in the voir dire to the jury or in any opening remarks in the course of the trial."

In so ruling, trial court obviously relied on the greatly predominant view holding assessed valuations inadmissible as direct, substantive evidence of fair market value in condemnation proceedings. 5 Nichols on Eminent Domain § 22.1 (Rev. 3rd ed. 1969); 1 L. Orgel, Valuation Under the Law of Eminent Domain § 151 (2nd ed. 1953); 27 Am.Jur.2d, Eminent Domain § 441, pp. 354–56; 29A C.J.S. Eminent Domain § 273(4), pp. 1201–02.

Condemnee, however, points to an exception to the above general holding: the owner's valuation on his return for taxation is ordinarily competent evidence against him. Id.; see Annot., 39 A.L.R.2d 209 (1955). Condemnee argues this exception should also apply where, as here, the condemning body participated in fixing the

assessed "actual value," and (retreating from the original estoppel theory) such valuation should at least be admitted against the condemnor as an admission against interest.

Similar arguments have been rejected by the majority of appellate courts confronting the issue, on the grounds the determination of assessed value is for a different purpose, or that the condemnor is not bound by acts of the public assessing officer. See, e. g., United States v. Certain Parcels of Land, 261 F.2d 287 (4 Cir. 1958); Culver v. Commonwealth, Department of Highways, 459 S.W.2d 595 (Ky. 1970); City of Chicago v. Harrison-Halsted Building Corp., 11 Ill.2d 431, 143 N.E. 2d 40 (1957); State Highway Commission v. Anderegg, 241 Or. 31, 403 P.2d 717 (1965). But see, Louisiana Highway Commission v. Giaccone, 19 La.App. 446, 140 So. 286 (1932); In re Site for Memorial Hall, 316 Mich. 215, 25 N.W.2d 174 (1946).

It is true this court, in several early cases, held the assessment roll with respect to the land affected by the condemnation was admissible when signed by the property owner. Nedrow v. Michigan-Wisconsin Pipe Line Co., 245 Iowa 763, 61 N.W.2d 687 (1953); Duggan v. State, 214 Iowa 230, 242 N.W. 98 (1932); Welton v. Iowa State Highway Commission, 211 Iowa 625, 233 N.W. 876 (1930). It is not apparent from these decisions whether condemnee raised the defenses under our then relevant statutes that market value was only one element considered in arriving at the actual value upon which assessed value was based (§ 7109, The Code, 1927; § 441.13, The Code, 1950), that the assessor, not the owner, was charged with fixing values for the listed property (§ 7106, The Code, 1927; § 441.10, The Code, 1950), or that the owner swore only the "list" was correct, not specifically to the value affixed by the assessor (§ 715, The Code, 1927; § 441.18, The Code, 1950).

When those cases were decided, the tax assessment appeal decisions ruled if the property had a market value, there could ordinarily be no distinction between market value and actual value. Hawkeye Portland Cement Co. v. Board of Review, 205 Iowa 161, 217 N.W. 837 (1928).

That interpretation, however, was eroded by Bankers Life Co. v. Zirbel, 239 Iowa 275, 31 N.W.2d 368 (1948) and Des Moines Building-Loan & Savings Ass'n v. Bomer, 240 Iowa 1192, 36 N.W.2d 366 (1949). Finally, in James Black Dry Goods Co. v. Board of Review, 260 Iowa 1269, 1276, 151 N.W.2d 534, 538 (1967), cert. dismissed, 390 U.S. 901, 88 S.Ct. 817, 19 L.Ed.2d 868 (1968), we said,

"It should be noted that the value to be determined is actual value and that 'market value, if any,' is only one of the elements to be considered. Market value, of course, is an important consideration but it may be inflated above or deflated below actual value determined under the statute and it is not controlling. * * * A change in market value would not necessarily establish or change actual value."

At all times pertinent to this tax valuation appraisal the relevant code provision specified market value as only one element of "actual value." See Regular Session of the 58th General Assembly, Chapter 291, Section 21; § 441.21, The Code, 1966. We relied on this statutory language in *James Black*, supra, to hold for tax purposes "market value" and "actual value" could not be equated. In view of that rationale, we cannot logically hold "actual value" for tax purposes is direct, substantive evidence of fair market value in an eminent domain proceeding.

We are further influenced toward this conclusion by the condemnor's argument it was only partially, and indirectly, responsible for the Cleminshaw tax appraisal. It had one of three votes (without veto power) on the conference board which selected the appraisal firm and appointed the city assessor. Regular Session

of the 58th General Assembly, Chapter 291, Section 2. Condemnor itself had a statutory right to appeal an assessment, negating the claim the city assessor was its agent. Section 442.10, The Code, 1958.

Pertinent here is the pragmatic rationale in 1 L. Orgel, Valuation Under the Law of Eminent Domain § 150, at pp. 629–31, that actual value for tax purposes need only be relatively correct, not absolutely exact:

"For purposes of taxation, property valuation is presumed to measure ability to pay and is used as a basis for distributing the costs of government. The tax officials are interested primarily in a fair basis of apportionment of these costs * * *. * * * [T]he courts recognize that in tax valuation equality of assessment is more important than a precise determination of market value. In eminent domain, on the other hand, the purpose of the valuation is not to serve as a basis for apportioning the current costs of government, but rather to indemnify an owner for the total loss of his property."

Lastly, this record indicates the tax appraisal figure was disclosed to the jury by condemnee in cross-examination of condemnor's expert witness.

We hold trial court did not err in disallowing admission of the actual value of the property as fixed for tax purposes as direct, substantive evidence of fair market value in an eminent domain proceeding.

This determination is not to be construed as necessarily controlling in a comparable situation in which property is valued for tax purposes under our present statute which, excepting only agricultural property, provides "The actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property." Section 441.21, The Code, 1973. For discussion of the new fair market value approach see Tiffany v. County Bd. of Rev. in and for Greene Co., 188 N.W.2d 343 (Iowa 1971); Juhl v. Greene County Board of Review, 188 N.W.2d 351 (Iowa 1971).

II. In instruction 5 trial court precisely followed Instruction 14.4, I Special Committee on Uniform Court Instructions, Iowa State Bar Association, Iowa Uniform Jury Instructions (Civil) (1970), which defines "fair and reasonable market value" in terms of "cash price." This was objected to on the grounds it would create "further confusion" and that the appraisal experts did not testify in terms of "cash price."

In Stortenbecker v. Iowa Power and Light Company, 250 Iowa 1073, 1079–1080, 96 N.W.2d 468, 472 (1959) we set out with approval language of an instruction defining "fair and reasonable market value" without reference to the term "cash price." We there said it was not error to reject an instruction referring to "fair cash market value," and pointed out the terms "value," "market value," "cash market value," "fair market value," and "fair cash market value" are generally used synonymously. See 4 Nichols on Eminent Domain § 12.1 (Rev.3rd ed. 1971). In *Stortenbecker* we deemed it significant that by all authority the condemnor is required to pay the award in cash.

In instruction 1 trial court told the jury, "The law provides that a fair and just compensation means the payment of such a sum of money to the owners of the property taken or appropriated that will serve to make the owner whole." No objection was taken to this reference to a money payment.

In *Stortenbecker* we further said omission of the word "cash" did not necessarily infer a credit transaction. Applying that reasoning to this case, where experts testified in terms of fair and reasonable market value, there is no inference they were testifying to anything other than a cash price.

The conclusion we here reach is further buttressed by what we said regarding comparable sales in Redfield v. Iowa State Highway Commission, 252 Iowa 1256, 1263, 110 N.W.2d 397, 401 (1961):

"The fact that a sale claimed to be comparable may not have been for cash,

but by contract, does not always mean that it may not be admissible as having some bearing on the cash market value."

But condemnee appears to argue, in an obscure vein, a cash price might not be constitutional "just compensation." It is true and we judicially note, some "willing sellers," under present income tax laws and regulations, might well prefer an installment sale contract to a cash sale, in order to lessen tax consequences. It is doubtful this issue was raised by the objection to instruction 5. Condemnee offers no alternative to the objective approach of the instruction, and ignores the present law permitting reinvestment of property involuntarily converted without present income tax liability. Int.Rev.Code of 1954, § 1033. Where property has a fair market value, as here, we cannot, under the present state of our law and under this record, justify charting an uncertain excursion into the subjective area of the condemnee's property basis and ultimate tax consequences over which condemnee has some post-trial control.

We hold the trial court did not err in defining fair market value in terms of a cash price.

III. Before trial, condemnee refused to accept condemnor's offer to confess judgment in the sum of $125,000. The district court jury returned a verdict of $120,000. We have held the provision for condemnee's attorney fees, found in § 472.33, The Code, does not apply to services performed subsequent to the offer to confess judgment if the verdict is less than the offer. Tilton v. Iowa Power and Light Company, 250 Iowa 583, 94 N.W.2d 782 (1959); Draker v. Iowa Electric Co., 191 Iowa 1376, 182 N.W. 896 (1921). As in *Tilton*, this condemnee does not assign as error the issue that chapter 677, The Code (Offer to Confess Judgment), does not apply to a district court appeal in a condemnation proceeding.

■ In passing on the post-verdict application for fees, trial court properly gave consideration to the time spent, the amount involved, the difficulty of handling and importance of issues, the responsibility assumed, and the ability and standing of the attorneys. See In re Condemnation of Lands, 261 Iowa 146, 153 N.W.2d 706 (1967). With reference to these elements, trial court found,

"The pre-trial time spent by Plaintiff's attorneys reflects thorough and complete preparation which is to be expected of Mr. Randall and Mr. White. They are respected attorneys of great experience and ability. The case was thoroughly and expertly presented by attorneys for both parties. It involved well-located property of great value; the responsibility assumed is manifest; the award was increased; the issues were complex and novel requiring detailed research, depositions, and a thorough investigation of the local real estate market."

Trial court then found condemnee entitled to attorney fees for the claimed 163 hours of pre-trial preparation at $25 per hour, and an additional sum of $53.90 for pre-trial expenses, a total of $4128.90.

■ Our review of the fee allowance is not de novo. Trial court has considerable discretion in fixing attorney fees although the exercise thereof must be reasonable, not arbitrary. Nelson v. Iowa State Highway Commission, 253 Iowa 1248, 115 N.W.2d 695 (1962); Tilton v. Iowa Power and Light Company, supra.

■ Applying this standard of review, we cannot reconcile trial court's findings with its utilization of a mere time allowance at a rate deemed minimal for professional services in this state. We believe the amount fixed to be unrealistic, even disallowing for both the increase from the commission's award, noted by trial court, and the decrease from the offer, argued by condemnor. The pre-trial services under scrutiny, in view of trial court's findings, did not contribute to the decrease of the verdict from the amount of the offer.

Upon the adequate record before us, we may fix the allowance for fees in this case. See In re Condemnation of Lands, supra. We find the fair and reasonable attorney fees in this cause, for pre-trial preparation and expenses, to be in the sum of $6000. The judgment below shall be modified accordingly, and as so modified, affirmed. Costs on appeal shall be taxed one-half to each party.

Modified and affirmed.